COLEGIO DE ÓPTICOS DE PUERTO RICO y OTROS, demandantes y recurridos, *v.* PEARLE VISION CENTER, INC. y OTROS, demandados y peticionarios.

*Número:* CC-96-147          *Resuelto:* 10 de enero de 1997

*María Luisa Martínez*, de *Reichard & Escalera*, y *Luis F. Hernández Vélez*, abogados de los peticionarios; *Héctor M. Collazo*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

El 20 de febrero de 1992, Reinaldo Maldonado Rolón, óptico de profesión, acudió al local de Pearle Vision Express (en adelante Pearle) del *Vega Baja Mall*.[1] Allí fue atendido por Jessie Barreto e Isabel Rivera. En ese momento no se encontraba en el establecimiento optómetra u óptico alguno. Maldonado Rolón indicó a Barreto su interés en comprar unos espejuelos. Al requerírsele una receta, Maldonado Rolón entregó una expedida por un oftalmólogo. Barreto procedió a mostrarle varias monturas, de las cuales le recomendó una en particular. Le colocó dicha montura y le indicó que se veía bien. Sobre el tamaño de la montura, le expresó que le quedaba perfectamente bien.

Una vez Maldonado Rolón seleccionó la montura, Barreto preparó un expediente de venta en el que incluyó datos personales de Maldonado Rolón (nombre, teléfono, dirección, etc.). Luego le indicó el precio de venta y le recomendó una oferta, que consistía en varios tratamientos para el lente: filtro solar, protección contra rayazos y tinte. Maldonado Rolón se interesó sólo por el tinte. *Rivera pro-*

---

[1] Los hechos aquí relatados surgen de la declaración jurada ofrecida por el señor Maldonado Rolón, la cual acompañaba una demanda de interdicto preliminar y permanente contra Pearle Vision Express (en adelante Pearle). Véase Apéndice 1, pág. 60.

*cedió entonces a tomarle las medidas para determinar la distancia pupilar y la altura del bifocal.*

Maldonado Rolón pagó y Rivera le entregó un recibo. Le indicó que pasara más tarde a buscar sus espejuelos. Al recogerlos, Maldonado Rolón decidió probárselos y notó que su visión se distorsionó. Barreto le indicó que se debía a que los espejuelos eran nuevos y que una vez se acostumbrara a ellos, su visión se normalizaría. No le dieron ninguna recomendación sobre el uso de los espejuelos a pesar de que su condición visual requiere el uso continuo de éstos.

Mientras Maldonado Rolón se dirigía a su automóvil, los cristales de sus espejuelos se desprendieron, pues el lente era más pequeño que el marco. Se dirigió a su oficina óptica para examinar los lentes y se percató de que los bifocales estaban virados y no eran de uso progresivo, según su condición lo requiere. Además, descubrió que la distancia pupilar del espejuelo (65.60) no concordaba con la suya (66.63) y que los espejuelos no se ajustaban a la receta que le había entregado a las empleadas.

Ante esos hechos, el 31 de marzo de 1992, el Colegio de Ópticos de Puerto Rico, Inc. *et als*, (en adelante el Colegio) presentó en el entonces Tribunal de Primera Instancia, Sala Superior de Bayamón, una solicitud de interdicto preliminar y permanente y una reclamación por daños y perjuicios contra Pearle, Jessie Barreto e Isabel Rivera. Alegaron que Pearle empleaba a las señoras Barreto y Rivera para realizar funciones inherentes a la práctica de la óptica sin tener licencia para ello.[2] Además, esa conducta constituía una práctica ilegal de la óptica por cuanto estaban actuando en violación de la Ley Núm. 152 de 3 de junio

---

[2] En específico adujo que la actuación de las codemandadas consistió en recomendar, seleccionar y vender monturas para espejuelos; vender lentes oftálmicos; interpretar y despachar recetas oftálmicas; recomendar y vender tratamientos técnicos y especializados para lentes oftálmicos tales como filtro solar, lentes antirayazos y tinte; tomar medidas al cliente para determinar la distancia pupilar y la altura del bifocal y la preparación de expedientes para clientes.

de 1976([3]) que reglamenta la profesión de la óptica en Puerto Rico (en adelante Ley de Ópticos).

El 11 de mayo de 1992, Pearle presentó una moción en la cual solicitó que se dictara una sentencia sumaria a su favor. Alegó que la Ley Núm. 80 de 26 de junio de 1964([4]) (en adelante Ley de Optómetras), que regula la práctica de la optometría, *permite que técnicos, debidamente supeditados a un optómetra, puedan realizar esas labores y, por lo tanto, no es necesario que sus empleados tengan licencia de ópticos.* Acompañó dicha moción con una declaración jurada de Donald R. Johndrow, Gerente de Pearle, en la que manifestaba que "[l]as técnicas Jessie Barreto e Isabel Rivera trabajan en el local de Pearle Vision Center en Vega Baja bajo la directa supervisión profesional y ética de una optómetra y las labores de estas técnicas están supeditadas a dicha optómetra". Apéndice 1, *Exhibit* 1, pág. 86. Las codemandadas Barreto y Rivera presentaron una moción de sentencia sumaria con idénticos fundamentos. El Colegio se opuso. El 22 de julio de 1992 Pearle presentó su réplica. Argumentó que la Ley de Optómetras y la Ley de Ópticos son armonizables y que ambas autorizan la delegación de funciones ópticas a sus empleadas. Apéndice 1, pág. 333.

El 17 de noviembre de 1995 el Tribunal de Primera Instancia (Hon. Berta Mainardi Peralta, Juez) emitió una sentencia parcial en la que concedió sumariamente el remedio interdictal solicitado y ordenó a Pearle que cesara de inmediato de practicar o ejercer la profesión de óptico en violación a la Ley de Ópticos, ni hacerlo a través de personas sin licencia de óptico u optómetra.([5])

---

([3]) Enmendada por la Ley Núm. 82 de 1ro de septiembre de 1990 (20 L.P.R.A. sec. 2751 *et seq.*).

([4]) Enmendada por la Ley Núm. 29 de 7 de agosto de 1990 (20 L.P.R.A. sec. 531 *et seq.*).

([5]) En específico ordenó a los demandados a desistir de realizar gestiones como "medir los contornos del rostro de los pacientes, interpretar recetas oftálmicas, recomendar monturas e incurrir en cualesquiera actuaciones que correspondan a la prác-

El 16 de enero de 1996 Pearle presentó una petición de *certiorari* y/o escrito de apelación([6]) ante el Tribunal de Circuito de Apelaciones, Circuito Regional de Bayamón.([7])

El Tribunal de Circuito de Apelaciones emitió una sentencia confirmatoria el 29 de marzo y devolvió el caso al Tribunal de Primera Instancia para la continuación de los procedimientos. Concluyó que tanto la Ley de Optómetras como la Ley de Ópticos "no permiten que se delegue en personal auxiliar, ya sea del optómetra o del óptico, aquellas funciones para cuyo desempeño la misma ley requiere estudios especializados y reválida. *En ausencia de disposición de ley que lo autorice, no se puede delegar en el 'técnico supeditado al optómetra' el examen de la vista de un cliente y la receta de los lentes correspondientes, ni las funciones propias del óptico*". (Énfasis suplido.) Apéndice 2, págs. 400–401. Inconforme con dicha sentencia, Pearle acude ante nos.([8])

## II

En su único señalamiento de error, Pearle sostiene que la decisión del Tribunal de Circuito de Apelaciones menoscaba los derechos reconocidos a los optómetras y limita la práctica de la optometría al concluir que los técnicos debi-

---

tica de la óptica". Sentencia parcial del Tribunal de Primera Instancia, pág. 16; apéndice 1, pág. 53.

([6]) En lo pertinente, alegaron que el tribunal de instancia erró al concluir que los técnicos debidamente supeditados a un optómetra no pueden llevar a cabo sus funciones sin tener licencia de óptico, pues constituye una limitación impermisible a la Ley de Optómetras.

([7]) Las codemandadas, Jessie Barreto e Isabel Rivera, solicitaron unirse a dicha petición y adoptaron las alegaciones formuladas por Pearle.

([8]) Nos hace el señalamiento de error siguiente:

"Erró el Tribunal de Instancia al concluir que los técnicos debidamente supeditados a un optómetra no pueden llevar a cabo sus funciones sin tener licencia de óptico a tenor con la Ley de Opticos. Dicha interpretación menoscaba los derechos reconocidos a los optómetras y limita la práctica de la optometría al derogar los técnicos supeditados e imponerle a los optómetras una prohibición no contemplada en la ley." Petición de *certiorari*, pág. 6.

*Las codemandadas Barreto y Rivera solicitaron unirse a este recurso y así lo hemos concedido.*

damente supeditados a un optómetra no pueden llevar a cabo funciones propias de un óptico sin tener licencia para ello, a tenor con la Ley de Ópticos.

Pearle argumenta que la Ley de Optómetras autoriza a éstos a practicar la óptica en Puerto Rico y, por lo tanto, el personal auxiliar o supeditado a ellos también puede ejercer dichas labores. Ampara su argumento en el inciso c del Art. 1 de la Ley de Optómetras, 20 L.P.R.A. sec. 531(c), en el que se menciona al *"técnic[o] supeditad[o] debidamente a un ... optómetra".* (Énfasis suplido.) Alegan que esta mención del "técnico supeditado" que se hace en la ley autoriza al personal auxiliar a realizar todas las labores de un optómetra, incluyendo aquellas inherentes a la óptica, siempre y cuando estén bajo la supervisión y sujeción directa de un optómetra. Evaluemos su argumento.

### III

■ Cuando interpretamos una disposición específica de ley, debemos indagar los propósitos perseguidos por la Asamblea Legislativa. Nuestra determinación siempre debe asegurar el resultado que originalmente se quiso obtener. Esto es, que al interpretar y aplicar un estatuto hay que hacerlo teniendo presente el propósito social que lo inspiró. *Farmacias Moscoso, Inc. v. K-Mart Corp.,* 138 D.P.R. 497 (1995); *González Pérez v. E.L.A.,* 138 D.P.R. 399 (1995); *Vázquez v. A.R.P.E.,* 128 D.P.R. 513 (1991).

■ La práctica de la optometría fue regulada por primera vez en 1964 por la Ley Núm. 80, *supra.*[9] La optometría es un área de la ciencia dirigida a mejorar la agudeza visual mediante la corrección de errores refractivos.[10] A

---

[9] 20 L.P.R.A. sec. 531 *et seq.*

[10] *Refracción* es la desviación de los rayos de luz causado al pasar oblicuamente desde un medio de cierta densidad a otro de diferente densidad. En el ojo humano, este proceso hace posible la formación de imágenes de objetos externos en la retina, creando la visión. 6 *Lawyer's Medical Cyclopedia* Sec. 39.1, pág. 4 (ed. rev.).

pesar de no tener estudios en Medicina, el optómetra posee estudios graduados y licencia que le permiten realizar un examen de los ojos, para detectar defectos visuales acomodativos o musculares y determinar la agudeza visual. A su vez, está autorizado a prescribir lentes correctivos y ejercicios para fortalecer la visión sin el uso de drogas, medicinas o cirugía. 20 L.P.R.A. sec. 531(a).

Posee, además, estudios en despacho de recetas oftálmicas, materiales y laboratorio de óptica y óptica geométrica, física, oftálmica y visual.[11] Es por esto que la Ley de Optómetras lo autoriza a la *"confección y dispendio de los artefactos correctivos y prostésicos para la corrección de defectos visuales".*[12]

Posterior a la Ley de Optómetras se promulgó la Ley de Ópticos. Dispone que el óptico debe poseer un grado asociado en ciencias ópticas de un colegio reconocido por el Consejo de Educación Superior de Puerto Rico, aprobar un examen de reválida y obtener una licencia de la Junta Examinadora de Ópticos. 20 L.P.R.A. secs. 2751(d), 2753(j), 2754 y 2756(a).

El óptico está autorizado a interpretar y despachar recetas escritas por un oftalmólogo u optómetra; a tomar medidas para determinar el tamaño, la forma y las especificaciones del lente, la montura y los lentes de contacto, para así adaptarlas a las necesidades físicas del paciente. Realiza el tallado, el pulido, el corte y la instalación de lentes oftálmicos. Además, hace duplicados, reparaciones y repeticiones de lentes sin necesidad de una

---

[11] Véanse: Parte III, Art. IV, Reglamento General de la Junta Examinadora de Optómetras, Departamento de Salud, págs. 10–12, citado en Apéndice 7, págs. 500–503; Resolución Sobre la Práctica de la Óptica en Puerto Rico, Junta Examinadora de Ópticos, págs. 6 y 7, citado en Apéndice 1, págs. 133–134.

[12] *Artefactos Correctivos y Prostésicos* son espejuelos de lentes oftálmicos plásticos o de vidrio con o sin foco, lentes de contacto, prismas, lentes telescópicos y ojos artificiales. *Espejuelos de lentes oftálmicos* son espejuelos con o sin foco que tienen las propiedades ópticas para corregir o mejorar la visión. Reglamento General de la Junta Examinadora de Optómetras, *supra*, Parte I, Art. IV incisos S y T. Apéndice 6, págs. 494–495.

nueva receta. *No está autorizado a examinar el ojo ni a determinar medidas correctivas.* 20 L.P.R.A. sec. 2751.

■ Según el estado de derecho actual, el oftalmólogo([13]) (antiguamente conocido como oculista) y el optómetra son los únicos profesionales autorizados a examinar el órgano visual para identificar errores refractivos o de agudeza visual y a prescribir espejuelos, lentes de contacto y otros aparatos para corregir la visión. Sin embargo, sólo el optómetra y el óptico, debido a su preparación técnica, poseen el entrenamiento, las destrezas y la autorización para confeccionar y vender lentes correctivos y productos relacionados. Al oftalmólogo le están vedadas esas actividades mercantiles, a menos que emplee a un óptico debidamente autorizado. 20 L.P.R.A. sec. 2751(g).

■ No cabe duda de que la Ley de Optómetras reconoce la figura del "técnico supeditado". No obstante, la ley no lo define.([14]) El término "técnico supeditado" sólo aparece mencionado en la ley en el contexto de excluir a los oftalmólogos, optómetras y *técnicos supeditados a éstos*, de los efectos del Art. 1(c), 20 L.P.R.A. sec. 531(c).([15]) Esa sec-

---

([13]) *El oftalmólogo* es un doctor en Medicina, con conocimientos en cirugía de los ojos y en las estructuras relacionadas. Está capacitado para diagnosticar y tratar enfermedades, desórdenes y mal funcionamiento de los ojos. El oftalmólogo puede tratar al paciente con cirugía, drogas, lentes correctivos y otros métodos para corregir o mejorar la visión. *Lawyer's Medical Cyclopedia*, supra, págs. 3 y 4.

([14]) Sin embargo, el Reglamento General de la Junta Examinadora de Optómetras, *supra*, define brevemente al "técnico supeditado" como aquel estudiante u otra persona que trabaja para el optómetra. Véase Reglamento (Apéndice 7), Parte I, Art. IV, inciso (d).

([15]) El Art. 1(c) dispone:

"(c) 'Práctica de la optometría'. Se entenderá que está interviniendo en la práctica de la optometría toda aquella persona natural o jurídica que anuncie como que lleva a cabo exámenes de la vista; y/o intente practicar las materias de la optometría; que abriere o tuviere una tienda, óptica, establecimiento, despacho o taller con ese objeto; Disponiéndose, sin embargo, que toda tienda, óptica o establecimiento, despacho o taller que estuviere representado por un optómetra, oculista u oftalmólogo autorizado en Puerto Rico y que estuviere o hiciere visitas periódicas al mismo y que cumpla con las disposiciones y reglamentos de las secs. 531 *et. seq.* de este título, podrá anunciar y vender al público espejuelos de lentes oftálmicos y/o cristales con o sin foco, excepto que dicho optómetra, oculista u oftalmólogo solamente podrá repre-

ción dispone que constituye una evidencia prima facie de práctica ilegal de la optometría, poseer o tener bajo su poder material oftálmico y/o instrumental([16]) para examinar la vista. 20 L.P.R.A. sec. 531(d).

No podemos darle a dicha sección el alcance que pretende Pearle. La mención que hace la ley del técnico supeditado dista mucho de ser una autorización para que el personal subordinado a un optómetra pueda incurrir en la práctica de la óptica. No hemos encontrado nada en la Ley de Optómetras o en la de los ópticos que permita al personal supeditado practicar estas profesiones sin antes haber obtenido una licencia debidamente expedida por las respectivas juntas examinadoras.

Argumenta Pearle que el Reglamento del Colegio de Optómetras de Puerto Rico([17]) reconoce la existencia del personal auxiliar y que ni la ley ni el reglamento le imponen al

---

sentar una óptica, tienda, establecimiento, despacho o taller a la vez; *y disponiéndose más aun, que excepto en el caso de los oftalmólogos, oculistas u optómetras o en el caso de técnicos supeditados debidamente a un oftalmólogo u optómetra la presencia de cualquier material oftálmico y/o instrumental para examinar la vista, en poder de cualquier persona natural o jurídica no autorizada por las secs. 531 et. seq. de este título para practicar la optometría en Puerto Rico, constituirá evidencia prima facie de práctica ilegal de la optometría en esta jurisdicción.* (Énfasis suplido.) 20 L.P.R.A. sec. 531(c).

([16]) Es material oftálmico y/o instrumental para examinar la vista: forómetro, autoretractor, tonómetro, karatómetro, retinoscopio, oftálmoscopio (directo o indirecto), lámpara de hendidura, caja de pruebas y cualquier otro que se desarrolle o se acepte por la optometría. Reglamento General de la Junta Examinadora de Optómetras, *supra*, Parte IV, Art. II.

([17]) Dicho Reglamento del Colegio de Optómetras de Puerto Ricó, aprobado el 14 de noviembre de 1994, dispone:

*"EL OPTÓMETRA VELARÁ POR EL BIENESTAR Y SEGURIDAD DE SUS PACIENTES, NO PERMITIENDO QUE PERSONAL AUXILIAR RINDA UN SERVICIO O EJECUTE UNA OPERACIÓN PARA LA CUAL DICHO AUXILIAR NO ESTUVIERE DEBIDAMENTE CUALIFICADO O SE REQUIERA LA COMPETENCIA PROFESIONAL DEL OPTÓMETRA:*

"EL OPTÓMETRA DEBE INSPECCIONAR ADECUADAMENTE EL TRABAJO DEL PERSONAL AUXILIAR DE SU OFICINA PARA QUE NO DISMINUYA LA CONFIANZA DEL PÚBLICO EN LOS SERVICIOS QUE HUBIERE QUE RECIBIR.

"SE DEBERÁ POR OTRO LADO, TENER PRESENTE QUE LA AYUDA QUE RECIBE NUESTRA PROFESIÓN, DEL PERSONAL AUXILIAR DE LA OFICINA, ES DE GRAN VALOR Y SE LE TRATARÁ CON LA CONSIDERACIÓN Y RESPETO A QUE ES MERECEDOR, TENIENDO SIEMPRE CUIDADO DE NO MENOSCABAR, EN FORMA ALGUNA, LOS DERECHOS QUE LE OTORGUEN LAS LEYES

optómetra el requisito de que ese personal posea una licencia de óptico. No tiene razón.

Aunque las disposiciones reglamentarias citadas por Pearle indican que el optómetra podrá estar asistido por un personal auxiliar, éstas no autorizan a ese personal a realizar funciones propias del optómetra. Todo lo contrario, el Reglamento del Colegio de Optómetras, *supra*, dispone que el optómetra *"NO PERMIT[IRÁ] QUE EL PERSONAL AUXILIAR RINDA UN SERVICIO O EJECUTE UNA OPERACIÓN PARA LA CUAL DICHO AUXILIAR NO ESTUVIERE CUALIFICADO O SE REQUIERA LA COMPETENCIA PROFESIONAL DEL OPTÓMETRA"*. (Énfasis suplido.) Apéndice 6, pág. 471. ([18])

Más aún, el argumento se desvanece al tomar en consideración que el *reglamento* no puede autorizar a una persona a practicar la óptica en ausencia de una disposición en la *ley* que lo autorice. *P.S.P. v. Com. Estatal de Elecciones*, 110 D.P.R. 400, 409 (1980); *Ex parte Irizarry*, 66 D.P.R. 672, 676 (1946).

■ Recordemos que "quienes reclamen autoridad en ley *para ejercer una profesión en el área de la salud deberán probar sus alegaciones mediante la acreditación de que poseen las cualificaciones adecuadas que el legislador exige en protección del interés público de salvaguardar la salud del pueblo"*. (Énfasis en el original suprimido y énfasis suplido.) *Asoc. Drs. Med. Cui. Salud v. Morales*, 132 D.P.R. 567, 590 (1993).

---

DEL PAÍS, EN LO RELACIONADO CON EL HORARIO DE TRABAJO Y SU DEBIDA REMUNERACIÓN.

. . . . . . . .

"EL OPTÓMETRA DEBERÁ VELAR QUE EL PERSONAL AUXILIAR NO PROCESE NI DESPACHE RECETAS SIN TENER INCLUIDO EL NOMBRE DEL OPTÓMETRA LICENCIADO U OFTALMÓLOGO EN LETRA DE MOLDE, LA FIRMA DEL MISMO Y SU LICENCIA. Y VELARÁ QUE EL PERSONAL AUXILIAR NO PROCESE RECETA ALGUNA SIN LOS REQUISITOS ANTERIORES." (Énfasis suplido.) Apéndice 6, pág. 471.

([18]) Reglamento del Colegio de Optómetras de Puerto Rico, *supra*, Art. IV, Cap. XII(b) y (d).

Quien practique la óptica se convierte en un profesional de la salud y, como tal, tiene el deber de rendir sus servicios con el mismo grado de cuidado, conocimiento, competencia y destreza que los demás miembros de esa profesión. De esta forma se facilita que las personas puedan hacer una selección informada y menos arriesgada del óptico.

■ Concluimos que el Legislador para asegurar que sólo el personal debidamente entrenado practique la óptica dentro de nuestra jurisdicción, y para que los dispositivos oftálmicos despachados por éstos cumplan con las necesidades y circunstancias médicas del paciente, le requirió a todo óptico: *(1) un entrenamiento formal en ciencias ópticas; (2) poseer una licencia emitida por las respectivas juntas examinadoras de ópticos u optómetras, y (3) que cumplan con todos los requisitos y las guías que las leyes les imponen al ejercer su profesión.*

IV

Sin embargo, lo anterior no es suficiente para disponer del recurso. Pearle alega que la Ley de Ópticos expresamente dispuso que no puede ser interpretada menoscabando o limitando el ejercicio de la optometría. El Art. 1(g)(2) de la Ley de Ópticos, 20 L.P.R.A. sec. 2751(g)(2), dispone:

Nada de lo dispuesto en este Capítulo podrá interpretarse:
(2) limitando o restringiendo el ejercicio de la oftalmología o la optometría. Disponiéndose, sin embargo, que ningún médico, oftalmólogo u oculista se podrá dedicar a la práctica de la óptica o venta de espejuelos directa o indirectamente, ni podrá recomendar al paciente una óptica específica para la preparación de su receta cuando vaya a obtener un beneficio económico por dicha recomendación a no ser que tenga trabajando en su oficina un óptico graduado y debidamente autorizado por la Junta Examinadora de Opticos de Puerto Rico.

Por otro lado, el Art. 9 dispone:

Las disposiciones de este Capítulo no afectarán a los optómetras debidamente autorizados para ejercer su profesión en Puerto Rico. 20 L.P.R.A. sec. 2759.

Reclama que esas expresiones exceptúan a los optómetras de aquellos profesionales que vendrían obligados a tener en su oficina un óptico licenciado para llevar a cabo funciones ópticas, pues conforme a la Ley de Optómetras, están autorizados a brindar sus servicios con la ayuda de un técnico debidamente supeditado. En consecuencia, alega que interpretar que el personal subordinado a un optómetra no está autorizado a prácticar la óptica, constituiría una limitación ilegal a la práctica de la optometría.

En *Asoc. Drs. Med. Cui. Salud v. Morales*, supra, pág. 584, al resolver una disposición similar a las citadas, concluimos que *la intención del Legislador al incluir estas cláusulas en la ley "fue especificar que la aprobación del estatuto no afectaría ni impondría limitaciones a la práctica de la [optometría] propiamente y que por otro lado los [ópticos] no tendrán más facultades ... que las especificadas en la ley"*. (Énfasis suplido.)

■ Está meridianamente claro que el Legislador, al aprobar la Ley de Ópticos en 1976, reconoció al optómetra su derecho a continuar ejerciendo la óptica según le fue reconocido en 1964 por la Ley de Optómetras. Sin embargo, notamos que la Ley de Optómetras no les autorizó a *delegar*, ya sea bajo su supervisión o sin ella, su derecho a practicar la optometría y, por consiguiente, la óptica. Repetimos, ninguna de las leyes faculta al personal auxiliar del óptico o del optómetra a ejercer las funciones de un óptico.

Más aún, al aprobarse la Ley de Ópticos, la Asamblea Legislativa tenía el conocimiento de que había muchas personas practicando la óptica sin tener un adiestramiento formal en la materia. Corolario a esto, nuestra Legislatura les permitió, luego de aprobar un examen, practicar la óp-

tica en nuestra jurisdicción.[19] Lo anterior constituye una prueba irrefutable de que con la aprobación de la Ley de Ópticos en 1976 se quiso eliminar toda la práctica *no autorizada* de la óptica en Puerto Rico.

En ausencia de una expresión clara y específica en la ley, no podemos refrendar la tesis de Pearle, en cuanto a que el optómetra es el único profesional de la salud visual que está exento de las disposiciones de la Ley de Ópticos y que, por lo tanto, el técnico supeditado a éste puede practicar la óptica.

## V

Sostiene Pearle que la interpretación que hace el Tribunal de Circuito de Apelaciones de la Ley de Ópticos constituye una derogación tácita de la Ley de Optómetras. Alega que ambas leyes son armonizables y que el Legislador, aun con la aprobación de la Ley de Ópticos, quiso mantener un diseño en el cual el optómetra podía tener un personal auxiliar que lo asistiera en sus funciones, incluyendo aquellos relacionados a la óptica, siempre y cuando estuviera bajo su tutela y al amparo de su responsabilidad profesional. Por otro lado, creó la figura del *óptico*, a quien se le permitió trabajar sólo si cumplía con todos los requisitos de ley.

De entrada aclaramos que la aprobación de la Ley de Ópticos no constituyó una "derogación tácita" de la Ley de

---

[19] El Art. 4 de la Ley de Ópticos dispone, en lo pertinente:

"(a) Los solicitantes a licencia de ópticos mediante examen deberán llenar los siguientes requisitos mínimos:

"(2) Diploma de grado asociado en ciencias ópticas obtenido en una escuela o colegio reconocido por el Consejo de Educación Superior de Puerto Rico o de una escuela que cuando se otorgó el diploma estuviese reconocida por la ciudad o estado de la misma *o que haya practicado la óptica en Puerto Rico por tres (3) años con anterioridad al 31 de diciembre de 1968.* No se admitirán diplomas de ópticos obtenidos mediante estudios por correspondencia.

"El requisito del diploma de grado asociado en ciencias ópticas antes establecido entrará en vigor a los tres (3) años de la vigencia de esta ley enmendatoria." (Énfasis suplido.) 20 L.P.R.A. sec. 2754(a)(2).

Optómetras en ninguna de sus disposiciones. De igual forma reiteramos que la Ley de Optómetras *nunca autorizó* al personal auxiliar del optómetra a ejercer esa profesión. Por el contrario, la Ley de Optómetras fue aprobada con el propósito de imponer unos requisitos mínimos previos de educación y destreza para ejercer este campo de la salud visual.

Somos conscientes de que la práctica en la profesión ha sido que el optómetra delegue en su personal auxiliar muchas de las funciones técnicas relacionadas con la óptica. Sin embargo, la costumbre y la práctica no pueden prevalecer contra la observancia de la ley.[20] Después de la Constitución, la ley es la fuente de derecho primera en jerarquía. Los tribunales tenemos el deber inexcusable de mantener su eficacia y de nulificar cualquier conducta contraria a ella.

Reiteradamente hemos expresado que " 'si existe un conflicto irreconciliable entre una nueva disposición y estatutos previos referentes a la misma materia, la nueva disposición será la que controle o prevalezca, ya que constituye la última expresión de la legislatura' ". *Díaz v. Srio. de Hacienda*, 114 D.P.R. 865, 874 (1983), citando a J.G. Sutherland, *Statutes and Statutory Construction*, 3ra ed., Chicago, Ed. Calaghan and Co., 1943, Vol. 2, Sec. 5201, pág. 532. Véase *Farmacias Moscoso, Inc. v. K-Mart Corp.*, supra. Aun si asumiéramos, para los fines de esta argumentación, que la Ley de Optómetras, en efecto, autorizaba al personal subordinado a un optómetra a realizar funciones inherentes a la práctica de la óptica, con la aprobación de la Ley de Ópticos, como última expresión de la Legislatura se prohibió esta práctica, pues expresamente

---

[20] Al respecto, es importante recordar lo preceptuado por el Art. 5 del Código Civil, 31 L.P.R.A. sec. 5, a los efectos de que las "leyes sólo se derogan por otras leyes posteriores; y no prevalecerá contra su observancia el desuso, la costumbre, o la práctica en contrario". Véanse: *Piñero, Gobernador v. Barreto, Alcalde*, 68 D.P.R. 145, 151 (1948); *Reyes v. Torres*, 65 D.P.R. 821, 825 (1946).

impone requisitos mínimos para poder ejercer dicha profesión.

■ Permitir que personas incompetentes y sin la debida preparación académica practiquen la optometría o la óptica, tendría consecuencias nefastas para la salud, la seguridad y el bienestar del pueblo. *El propósito del Legislador al crear la Ley de Ópticos fue evitar que personas sin los conocimientos y las destrezas adecuadas puedan dedicarse al ejercicio de la óptica en Puerto Rico.*[21]

Es menester señalar que tanto la Ley de Optómetras como la de Ópticos sufrieron enmiendas en 1990 para cumplir con las exigencias de la Ley de Reforma Integral de los Servicios de Salud de 1976.[22] Ninguna de estas enmiendas[23] reconoció a los llamados "técnicos supeditados" facultad para llevar a cabo funciones de la práctica de la óptica o alguna excepción en referencia a la labor de éstos. Por el contrario, la última enmienda a la Ley de Ópticos tuvo el propósito de *"garantizar que los servicios prestados en este campo sean de mejor calidad y excelencia".* (Énfasis suplido.)[24]

Nuestra función es interpretar, no legislar. No podemos autorizar la práctica de la óptica por este personal auxiliar si los propios estatutos reguladores no lo hacen. Constituiría un contrasentido pretender que a pesar de que la Ley de Optómetras y la Ley de Ópticos imponen requisitos similares como la preparación académica y la posterior aprobación de un examen de reválida, que personas no autorizadas, como son los técnicos supeditados, puedan llevar a

---

[21] "[C]uando la Asamblea Legislativa regula la práctica de una profesión prima el interés, no de proteger a los miembros que la ejercen, sino de procurar el bienestar de la ciudadanía en general." *Asoc. Drs. Med. Cui. Salud v. Morales*, 132 D.P.R. 567, 590 (1993).

[22] Ley de Reforma Integral de los Servicios de Salud, Ley Núm. 11 de 23 de junio de 1976 (24 L.P.R.A. sec. 3001 *et seq.*).

[23] Ley Núm. 82, *supra*; Ley Núm. 29, *supra*.

[24] Exposición de Motivos de la Ley Núm. 82 de 1ro de septiembre de 1990, Leyes de Puerto Rico (Parte 1) 487.

cabo funciones inherentes a estas profesiones. No se le puede atribuir a la Asamblea Legislativa semejante *brutum fulmen.*

## VI

Finalmente, debemos resolver si los servicios ofrecidos por Pearle por medio de sus empleadas, Jessie Barreto e Isabel Rivera, constituyeron una práctica ilegal de la óptica.

El Colegio alegó en su solicitud de interdicto preliminar y permanente que las empleadas Barreto y Rivera realizaron gestiones inherentes a la práctica de la óptica sin el adiestramiento necesario y sin estar autorizadas. Alegan, en específico, que sus actuaciones consistieron en recomendar, seleccionar y vender monturas de espejuelos; determinar la distancia pupilar y altura bifocal de Maldonado Rolón; interpretar y despachar la receta de un oftalmólogo, la venta del lente oftálmico; recomendar y vender tratamientos para dicho lente, y preparar un expediente de venta para el mencionado cliente.

Por su parte, Pearle adujo en su Solicitud de Sentencia Sumaria ante el Tribunal de Instancia y en su recurso ante este Foro que sus empleadas rindieron estos servicios bajo la supervisión de un optómetra. En la declaración jurada que acompañó con su moción se limitó a exponer que estas empleadas trabajaban bajo la supervisión de un optómetra y que sus labores estaban supeditadas a éste. No obstante, esa declaración no atiende los hechos específicos ni las gestiones realizadas por estas empleadas, que dieron lugar a este pleito. Tampoco enfrenta directamente el señalamiento del Colegio a los efectos de que no había un optómetra presente en el momento cuando se rindieron los servicios al señor Maldonado Rolón. Esta declaración constituye más bien una oposición genérica a las imputaciones hechas por los demandantes.

Analizada la declaración jurada prestada por Maldonado Rolón, en la cual relata las actuaciones de las empleadas Barreto y Rivera, no existe evidencia de que éstas *interpretaran* la receta. Tampoco se evidencia que ellas *confeccionaran* los lentes oftálmicos que requería dicha receta.

De otro lado, examinada la Ley de Ópticos, entendemos que recibir una receta de un oftalmólogo; mostrar, colocar y recomendar una montura (desde el punto de vista estético), preparar expedientes de venta, y recomendar tratamientos para el cuidado del lente —siempre y cuando la condición del paciente no requiera otra cosa— *no* son funciones inherentes a la práctica de la óptica. Estas labores pueden ser realizadas por empleados no ópticos, pues no representan un peligro a la salud visual del cliente.

Atendiendo los hechos específicos de este caso, según fueron relatados por el demandado Maldonado Rolón, resolvemos que la única gestión realizada por las empleadas Barreto y Rivera, inherente a la práctica de la óptica, fue determinar la distancia pupilar y la altura del bifocal a Maldonado Rolón mediante la medición de sus contornos faciales.

Concluimos, pues, que las señoras Barreto y Rivera incurrieron en esas gestiones inherentes a la práctica de la óptica sin poseer una licencia expedida por la Junta Examinadora de Ópticos. Pearle, al carecer de personal capacitado y debidamente autorizado para ejercer la óptica, incurrió en una práctica ilegal de esta profesión,[25] la cual la Legislatura quiso evitar al promulgar la Ley de Ópticos. Adoptar la interpretación de Pearle, equivale a entender

---

[25] Cualquier persona que se dedique directa o indirectamente, al ejercicio de la óptica, sin tener licencia, cometerá un delito menos grave. 20 L.P.R.A. sec. 2760.

Por otro lado, bajo la propia Ley de Ópticos, es motivo para revocar la licencia de óptico autorizar a una persona bajo su supervisión a realizar las funciones de óptico. 20 L.P.R.A. sec. 2757(a)(9).

que la Legislatura hizo una excepción en la ley que no concuerda con su intención legislativa de erradicar la práctica no autorizada de la óptica.

Aclaramos que nuestra decisión en el día de hoy no constituye una prohibición absoluta a que tanto los optómetras como los ópticos puedan emplear personal para que los asistan en sus labores. Reconocemos la necesidad de que estos profesionales tengan en su oficina otro personal como son dependientes, secretarias, recepcionistas, cajeros, personal de mantenimiento, etc. No obstante, *estos empleados deberán abstenerse de realizar funciones en las que es necesario tener conocimientos especializados en óptica, conforme la Ley de Ópticos.* Está limitación no se refiere a labores incidentales al puesto de ese personal auxiliar como la preparación de expedientes de ventas, cobro de mercancía, etc.

Por los fundamentos antes expuestos, *se confirmará la Sentencia del Tribunal de Circuito de Apelaciones y se devolverá el caso al foro de instancia para la continuación de los trámites conforme lo aquí resuelto.*

El Juez Asociado Señor Fuster Berlingeri disintió sin una opinión escrita.