Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| CARLOS JAVIER RIVERA PÉREZ  **Recurrido**  V.  ESTADO LIBRE ASOCIADO DE PUERTO RICO/NEGOCIADO DE LA POLICÍA DE PUERTO RICO  **Peticionarios** | TA2025CE00503 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de TOA ALTA  Caso Núm.: BY2025CV02639  Sobre: Petición/Revisión Portación Sobre Ley de Armas y otros |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda del Toro y la Jueza Lotti Rodríguez.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de noviembre de 2025.

Comparece ante nos el Estado Libre Asociado de Puerto Rico (en adelante, la "Parte Peticionaria") por conducto de la Oficina del Procurador General mediante una Petición de *Certiorari* instado el 24 de septiembre de 2025. En su recurso, nos solicita la revisión de la Orden emitida por el Tribunal de Primera Instancia el 6 de agosto de 2025, en donde se denegó una Moción de Desestimación al amparo de la Regla 10.5(2) de Procedimiento Civil.

Por los fundamentos que expondremos a continuación expedimos el auto de *Certiorari* y revocamos la Resolución recurrida.

**-I-**

A continuación, exponemos el tracto procesal relevante al caso de autos, conforme surge del expediente ante nuestra consideración.

El 23 de mayo de 2025, la Parte Recurrida presentó una demanda al amparo del Art. 2.02(d)(4) de la Ley de Armas en contra del Estado Libre Asociado de Puerto Rico (en adelante, "ELA") y el

Negociado de la Policía de Puerto Rico (en adelante, "NPPR").[1] En dicho escrito expuso que hubo una notificación, el 28 de marzo de 2025, del NPPR en donde se le denegó la solicitud de licencia de arma número 623759.[2] El fundamento para la denegatoria según se expone en la demanda fue por el Art. 2.02(d)(3) y 2.09 debido a que la Parte Recurrida tiene una convicción de delito menos grave que conlleva violencia.[3] El 11 de abril de 2025, la Parte Recurrida presentó una Moción de Reconsideración la cual no fue atendida por parte del NPPR.[4]

El 23 de mayo de 2025 Carlos Javier Rivera Pérez presentó una solicitud de revisión administrativa ante el TPI. El 4 de junio de 2025, los emplazamientos fueron diligenciados al NPPR como al ELA.[5]

El 17 de julio de 2025, el ELA presentó una Moción de Desestimación al amparo de la Regla 10.5(5) de Procedimiento Civil debido a que el alegato de la Parte Recurrida dejó de exponer una reclamación que justifique la concesión de un remedio.[6] Además, exponen que a base del Art. 2.09 de la Ley Núm. 168 - 2019 uno de los fundamentos por los cuales se puede rehusar expedir una licencia es cuando se ha cometido un delito menos grave que conlleve violencia.[7] El Peticionario alegó que la parte Recurrida tuvo una convicción por infracción al Art. 121 del Código Penal de 2004 el cual tipificaba el delito de Agresión.[8] Por lo cual, no cualificaba para la expedición de una licencia de armas.

El 5 de agosto de 2025, la Parte Recurrida presentó una Moción en Oposición a Solicitud de Desestimación.[9] En dicho escrito

---

[1] Véase entrada de SUMAC TPI núm. 1
[2] *Íd.*
[3] *Íd.*
[4] *Íd.*
[5] Véase entrada de SUMAC TPI núm. 5.
[6] Véase entrada de SUMAC TPI núm. 7.
[7] *Íd.*
[8] *Íd.*
[9] Véase entrada de SUMAC TPI núm. 15.

señaló que no se puede tomar en consideración la convicción de un delito menos grave y que fue eliminada conforme a derecho y que el mismo no aparece en su certificado de antecedentes penales.[10]

El 6 de agosto de 2025, el Tribunal de Primera Instancia emitió una Orden en donde no desestimó el caso.[11] Posteriormente, el 21 de agosto de 2025, el ELA presentó una Moción de Reconsideración.[12] Dicha Moción de Reconsideración fue declarada No Ha lugar, el 25 de agosto de 2025.[13]

Inconforme con la determinación, el 24 de septiembre de 2025, compareció el ELA por conducto de la Oficina del Procurador General en la cual presentó una Petición de *Certiorari*.[14] En dicho escrito hicieron el siguiente señalamiento de error:

> Erró el Tribunal de Primera Instancia al denegar la Moción de desestimación de la PPR, dado a que los hechos alegados en la Demanda se desprende que la parte recurrida no tiene derecho a remedio alguno bajo el estado de derecho actual, específicamente, el Artículo 2.09 y el Artículo 2.02(d)(3) y (4) de la Ley Núm. 168-2019, *supra,* que prohíbe la expedición de licencias de armas a personas convictas por delitos menos grave que conlleven la violencia y faculta a la Policía de Puerto Rico verificar los archivos digitales a los que tiene acceso y utilizarlos para determinar si concede o no la licencia de armas a un solicitante.

El 5 de agosto de 2025, la Parte Recurrida presentó su Moción en oposición a solicitud de desestimación.[15] Resumidos los hechos que originan la presente controversia, examinemos el derecho aplicable.

**-II-**

**A. El derecho a portar armas y Ley de Armas de Puerto Rico de 2020**.

La segunda enmienda de la Constitución federal dispone que "[s]iendo necesaria para la seguridad de un Estado Libre una

---

[10] *Íd.*
[11] Véase entrada de SUMAC TPI núm. 16.
[12] Véase entrada de SUMAC TPI núm. 17.
[13] Véase entrada de SUMAC TPI núm. 18.
[14] Véase entrada de SUMAC TA núm. 1.
[15] Véase entrada de SUMAC TA núm. 3.

[m]ilicia bien organizada, no se deberá coartar el derecho del pueblo a poseer y portar armas".[16] El Tribunal Supremo de los Estados Unidos ha establecido que el derecho a poseer armas es un derecho fundamental.[17] Cabe destacar, que al igual que la mayoría de los derechos este no es uno absoluto.

La Ley Núm. 168 – 2019 mejor conocida como la Ley de Armas de Puerto Rico tiene como fin crear un estatuto donde se tenga como balance el derecho constitucional de una persona a poseer y portar armas y el derecho del estado a regularlo.

El capítulo dos (2) de la Ley Núm. 168 – 2019 gira en torno a la licencia y reglamentación de las armas. El Art. 2.02 inciso (a) establece que la Oficina de Licencia de Armas, expedirá licencia de armas a todo peticionario que cumpla con los siguientes requisitos:

(1) Haber cumplido veintiún (21) años de edad; o haber cumplido dieciocho (18) años de edad y haber juramentado como integrante del Negociado de la Policía, Policía, Municipal u Oficial de Custodia del Departamento de Corrección.

(2) Tener un expediente negativo de antecedentes penales y no encontrarse acusado y pendiente o en proceso de juicio por algunos de los delitos enumerados en el Artículo 2.09 de esta Ley o sus equivalentes, tanto en Puerto Rico, como en cualquier jurisdicción de Estados Unidos, a nivel federal o en cualquier país extranjero.[18]

. . . . . . .

En lo que respecta a el Art. 2.09 el legislador estableció cuales fundamentos puede utilizar el Estado para rehusar a expedir una licencia. Dicho artículo dispone que "[l]a Oficina de Licencia de Armas no expedirá licencia de armas, o de haberse expedido se revocará, la licencia de armas de cualquier persona que haya sido convicta, en Puerto Rico, en cualquier otra jurisdicción

---

[16] Emda. II, Const. EE. UU., LPRA, Tomo 1.
[17] D.C. v. Heller, 554 US 570 (2008).
[18] 25 LPRA sec. 462a.

estadounidense de cualquier delito grave o su tentativa, por delito menos grave que conlleve violencia" (. . .).[19]

El Art. 2.02 (d)(3) expone que una vez se acepte una solicitud para el otorgamiento de una licencia de arma, la Oficina de Licencia de Armas, resolverá y certificara por escrito si el solicitante cumple o no con los requisitos establecidos en la Ley Núm. 168 – 2019. Esto se realizará mediante una:

> [I]nvestigación en los archivos digitales de cualquier agencia gubernamental de Puerto Rico, de Estados Unidos o cualquier subdivisión política de este, de cualquier entidad extranjera o internacional a la que pueda tener acceso, incluyendo los archivos del National Crime Informatino (NCIC), del Natinoal Instant Criminal Background Check System (NICS), el Sistema de Información de Justicia Criminal (SIJC-PR) y el Registro Criminal Integrado (RCI).[20]

En cuanto a el inciso (d)(4) el estatuto establece que:

> De resultar la investigación realizada por la Oficina de Licencias de Armas de los archivos digitales en una determinación que la persona no cumple con todos los requisitos establecidos en esta Ley, no le será concedida la licencia de armas, pero sin menoscabo a que el peticionario pueda solicitarla nuevamente en un futuro. El peticionario podrá solicitar a la Oficina de Licencias de Armas una reconsideración dentro de los próximos quince (15) días naturales siguientes a la denegatoria de la otorgación de la licencia y la Oficina de Licencias de Armas tendrá quince (15) días naturales para emitir una determinación y atender la misma. De sostenerse la denegatoria, o de no emitir ninguna determinación respecto a la reconsideración, el peticionario de la licencia de armas podrá acudir al Tribunal de Primera Instancia para la revisión de la decisión administrativa.[21]

### B. Ley de Certificado de Antecedentes Penales.

La Constitución del Estado Libre de Puerto Rico dispone como su política publica el "tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social".[22]

El Art. 3 de la Ley Núm. 254 – 1974 conocida como la Ley para autorizar a la policía de Puerto Rico a la expedición de Certificados

---

[19] 25 LPRA sec. 462h.
[20] 25 LPRA sec. 462a.
[21] *Íd.*
[22] Art. VI, Sec. 19, Const. ELA [Const. PR], LPRA, Tomo 1.

de antecedentes penales,[23] dispone como se llevará a cabo la eliminación de una convicción en los casos en que se sentencie a una persona por un delito menos grave. El artículo expone que el Comisionado del Negociado de Puerto Rico eliminará de forma automática toda convicción por delito menos grave del certificado de antecedentes penales cuando se den los siguientes escenarios:

> (a) Hayan transcurridos treinta (30) días naturales desde que se cumplió la sentencia o resolución durante ese tiempo no haya cometido otro delito, y

> (b) La persona convicta no se encuentre en el Registro de Personas Convictas por delitos Sexuales y Abuso contra menores, en el Registro de Personas Convictas por Delitos de Corrupción o en el Registro de Personas Convictas por violaciones a la Ley para la Prevención e Intervención con la Violencia Domestica.[24]

La Ley Núm. 254 – 1974 recibió una enmienda mediante la Ley Núm. 56 – 2024 en la cual establece en su art. 4 que "[a] los fines de asegurar el cumplimiento de los propósitos de esta Ley, ninguna agencia, corporación o instrumentalidad pública podrá requerir o utilizar información sobre aquellos delitos menos grave que hayan sido eliminados del certificado de antecedentes penales en perjuicio de un ciudadano".[25]

Asimismo, en el memorial explicativo de la Sociedad para Asistencia Legal de Puerto Rico en torno al P. de la C. 517 que da vida a la Ley Núm. 56 – 2024 establecieron que:

> No podemos abstraernos de que el ser humano muchas veces tiende a superar aquellas actuaciones y conductas del pasado; por lo que compete al Estado proveer los mecanismos necesarios para una total rehabilitación. P[o]r tanto, en ausencia de la existencia de antecedentes penales en un certificado, se debe otorgar entero crédito al certificado negativo de la Policía bajo la premisa de corrección y legitimidad que acompañan su expedición sin requerir mayor investigación sobre antecedentes debidamente eliminados.[26]

---

[23] Ley 254 de 27 de julio de 1974, según enmendada.
[24] 34 LPRA sec. 1725a-1.
[25] *Íd.*
[26] P. de la C. 517, 10 de noviembre de 2022, 1er Informe Comisión rendido con enmiendas, https://sutra.oslpr.org/medidas/137771

**-III-**

El 28 de marzo de 2025, el NPPR le denegó al recurrido una solicitud de licencia de arma cuyo número es el 623759. La justificación que brindó el negociado fue que la parte recurrida tenía una convicción de delitos menos grave que conlleva violencia entiéndase el delito de agresión según tipificado en nuestro Código Penal. Cabe destacar, que dicho delito menos grave fue eliminado del certificado de antecedentes penales conforme a derecho.

En el caso de autos tenemos una tensión normativa entre dos disposiciones estatutarias, entiéndase el Art. 2.09 de la Ley Núm. 168 - 2019 *vis a vis* (frente a frente) el Art. 4 de la Ley Núm. 56 – 2024. Por un lado, la Parte Peticionaria señala que a base del Art. 2.02(d)(3) la Oficina de Licencias de Armas puede investigar *los archivos digitales* de cualquier agencia gubernamental incluyendo el *National Crime Information Center* y el *National Instant Crime Background Chek System.* Por otro lado, la Parte Recurrida establece que según dispone el Art. 4 de la Ley Núm. 56 - 2024 ninguna agencia, corporación o instrumentalidad publica podrá requerir o utilizar información sobre aquellos delitos menos grave que hayan sido eliminados del certificado de antecedentes penales en perjuicio de un ciudadano.

Al evaluar las controversias ante nuestra consideración en instancias nos vemos ante situaciones, como las que nos ocupa, en la que leyes especiales aparentan estar enfrentadas. Por un lado, la Ley para autorizar a la Policía de Puerto Rico a la expedición de certificados de antecedentes penales que ordena la eliminación del delito del Certificado de Antecedentes Penales, en ciertas ocasiones y, prohíbe a las entidades gubernamentales requerir o utilizar información sobre aquellos delitos menos grave que hayan sido eliminados del certificado de antecedentes penales. Y, por otro lado, La Ley de Armas que prohíbe a la Oficina de Licencia de Armas

expedir una licencia a cualquier persona que haya sido convicta, en Puerto Rico o en cualquier otra jurisdicción estadounidense por entre otros, delito menos grave que conlleve violencia. Este es el caso del recurrido quien no niega haber sido convicto por un delito de agresión que conlleva violencia, sino que, a su entender, ya cumplió su pena y toda vez que tal delito se borra del Certificado de Antecedentes Penales no puede ser tomado en consideración para negarle la licencia.

La controversia ante nuestra consideración precisa de un ejercicio de hermenéutica legal. Al llevarlo a cabo, más allá de una lectura cuidosa de la normativa, estamos obligados a considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobar las leyes en controversia. Y en ese estudio debemos asegurarnos de que cuando interpretamos una disposición específica, nuestro análisis permita el resultado que originalmente se quiso obtener. Para conocer que deseaba el legislador hay que escudriñar en la normativa el propósito social que lo inspiró. *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 ___ (2025): *Piñero v. A.A.A.,* 146 DPR 890, 898 (1998); *Col. Ópticos P.R. v. Pearl Vision Center,* 142 DPR 221, 228 (1997).

Adviértase que el Código Civil de 2020 dispone que para descubrir el verdadero sentido de una ley cuando sus expresiones son ambiguas, se considerará su razón y su espíritu, mediante la atención a los objetivos del legislador, a la causa o el motivo para dictarla.31 LPRA sec. 5342.

Entonces, conociendo el propósito social que inspiró todas las leyes que atañen nuestra controversia en deferencia a la función de una rama hermana de gobierno es nuestra obligación armonizar, hasta donde sea posible, todas las disposiciones de ley implicadas en el caso con miras a lograr un resultado sensato, lógico y razonable que represente y salvaguarde la efectividad de la intención

legislativa. "[L]os artículos de una ley deberán interpretarse los unos por los otros, atribuyendo a los dudosos el sentido que resulte del conjunto de todos" *Vázquez v. Consejo de Titulares*, supra; *Departamento de Hacienda v. Telefónica*, 164 DPR 195, 204 (2005).

Recientemente en *Vázquez v. Consejo de Titulares*, supra, el Tribunal Supremo de Puerto Rico nos recuerda que a toda ley le demos la interpretación que mejor responda a los propósitos que persigue. Interpretando la ley como un ente armónico, dándole sentido lógico a sus diferentes secciones, supliendo las posibles deficiencias cuando esto fuera necesario. Véase también *Rolón Martinez v. Supte. Policía*, 201 DPR 26, 40-41 (2018); *Farmacias Moscoso, Inc. V. K-Mart Corp.*, 138 DPR 497, 502 (1995).

Por último, es menester también considerar que, ante dos disposiciones legales antagónicas, debe prevalecer la última voluntad legislativa, que es la expuesta en la nueva ley. *Com. Electoral PPD v. Comisionado Electoral PNP*, 205 DPR 559, 603 (2020), *Departamento de Hacienda v. Telefónica*, supra.

Primeramente, no hay duda alguna que estamos ante dos leyes especiales con disposiciones no tanto antagónicas sino confusas entre ellas, a nuestro entender. Precisa conocer el propósito social que dio margen a la creación de la Ley para autorizar a la policía de Puerto Rico a la expedición de Certificados de antecedentes penales (Ley de certificados). Desde su inicio en el 1974 la Ley de Certificados perseguía un fin laboral. En aquel entonces se informaban todas las sentencias criminales que estaban archivadas en el expediente de cada ciudadano, así como cualquier denuncia que apareciera en los récords policíacos, aunque se encontrase pendiente de disposición. Para entonces la legislatura reconocía que los patronos veían favorablemente contar con la información legal amplia sobre los tropiezos de ley que pudiera tener un potencial empleado. De otro lado, la criticaban aquellos

ciudadanos a quienes se les expiden certificados con casos pendientes de resolución final cuando posteriormente eran absueltos. Por lo que, la Asamblea Legislativa atendió la problemática prohibiendo la publicación de meras denuncias en el certificado.[27] No es hasta el 15 de septiembre de 2004 mediante las enmiendas de la Ley Núm. 314 que se permite solicitar la eliminación de la convicción en el certificado por toda persona que hubiese sido convicta por un delito menos grave, sujeto a ciertas condiciones también dispuestas en la Ley. La legislación respondía, entre otros a apoyar la reinserción del confinado en la comunidad mediante el trabajo lícito, ya fuese mediante empleo o autogestión.

Luego, la Ley Núm. 174 de 11 de agosto de 2011 reconoció que una vez una persona convicta cumplía con la sentencia impuesta y salía a la libre comunidad, no tenía una oportunidad real de empleo. Esto obedecía a que, como requisito para obtener empleo tanto en el ámbito privado, como el público, se requería un certificado de buena conducta que reflejará que tenía récord limpio de conducta delictiva. La mencionada legislación concluía que los requisitos de la ley, como estaba antes de enmendarla causaban que los ex confinados que recién cumplían su sentencia no pudiesen obtener un certificado de buena conducta, y, por ende, tampoco un empleo.[28] Expuso la Ley y citamos que, "en sintonía con dicha tradición y visión y considerando la importancia que reviste el que un ex confinado (a) tenga la oportunidad real de trabajar, no sólo para ganarse dignamente su sustento y el de su familia; sino además, para que cobre efectividad el proceso de rehabilitación, para que pueda re-insertarse productiva y positivamente a la sociedad y así evitar el que vuelva a delinquir; es menester y urgente

---

[27] Véase Exposición de Motivos Ley Núm. 254 de 27 de julio de 1974, para encomendar a la Policía de Puerto Rico la expedición de Certificaciones de Antecedentes Penales y proveer para su reglamentación.
[28] Véase Exposición de Motivos Ley 174-2011.

sacar del limbo a cientos de ex confinados que ya cumplieron su sentencia y que no pueden obtener un empleo por necesitar obligatoriamente un certificado de buena conducta."[29] No es hasta 13 años después, mediante la Ley Núm. 56 de 21 de marzo de 2024 que se enmienda la Ley de Certificado nuevamente, reconociendo el prejuicio latente que seguía afectando las posibilidades de ex confinados de reintegrarse a la comunidad y conseguir empleo cuando su certificado de antecedentes penales sigue reflejando sus convicciones. Reconoció entonces la Asamblea Legislativa la necesidad de un balance entre la protección de los intereses de un patrono que merece conocer el historial delictivo de un potencial empleado versus la necesidad apremiante de un ciudadano que cumple su pena en conseguir un empleo y ser productivo en la sociedad.[30] Posteriormente y para no extender nuestro análisis la Ley Núm. 3 de 9 de abril de 2025 y la Ley Núm. 22 de 2 de junio de 2025 continuaron enmendando la Ley de Certificado persiguiendo un fin social y laboral en sus enmiendas. Considerando dicho historial concluimos que la Ley de Certificado persigue un interés social de promover la reinserción de aquellas personas que se reintegran a la sociedad en el entorno laboral, ese es su espíritu.

Ahora bien, por otro lado, la Ley de Armas de Puerto Rico de 2020, en adelante, Ley de Armas, reconoció que el derecho a tener y portar armas es uno de carácter individual, fundamental y aplicable ante los estados en virtud de la Cláusula de Debido Proceso de Ley de la Decimocuarta Enmienda de la Constitución de Estados Unidos de América. Ese derecho fundamental de los ciudadanos respetuosos de la ley de poseer y portar armas de fuego para su defensa no es absoluto, puede ser limitado, ya que el Estado puede regularlo. En aquel entonces conforme el desarrollo de las

---

[29] Id.
[30] Véase Exposición de Motivos de la Ley 56-2024.

determinaciones del Tribunal Supremo Federal *D.C. v. Heller*, 554 US 570 (2008) y *McDonald v. City of Chicago,* 561US 742 (2010)*,* resultaba necesario salvaguardar y proteger los derechos de los ciudadanos americanos residentes en Puerto Rico, mediante la creación de una nueva Ley de Armas que fuese consistente con la Segunda Enmienda de la Constitución de Estados Unidos, con las decisiones del Tribunal Supremo federal, y dejar claro que, en Puerto Rico el portar y poseer armas de fuego es un derecho fundamental, e individual, al igual que en el resto de la Nación.[31] Si bien, dicha Ley ha sido enmendada en numerosas ocasiones su espíritu continua siendo el mismo, reconocer el derecho de fundamental e individual de los cuidadnos a portar armas, así como el derecho del Estado a regular la concesión de la licencia para poseer o portar.[32]

En fin, contamos con dos leyes especiales, una la Ley de Certificado con un fin social laboral y la otra ley, la Ley de Armas con el fin especifico de reconocer el derecho a portar armas, así como la potestad del Estado a regular dicho derecho. La Ley de Armas se dirige específicamente a la solicitud de la parte recurrida, por lo que en términos sustantivos sus disposiciones: (1) tienen primacía sobre la Ley de Certificado (2) cuando está en controversia, con otra ley como la Ley de Certificado.

Por otra parte, la Ley de Armas, a nuestro entender, claramente establece el mandato legislativo a la Oficina de Licencias de Armas de no expedir una licencia de armas, a cualquier persona que haya sido convicta, en Puerto Rico, en cualquier otra jurisdicción estadounidense de cualquier delito menos grave que conlleve violencia.  Tal es el caso de la parte recurrida. Si bien, se pudiera

---

[31] Véase Exposición de Motivos Ley 168 de 11 de diciembre de 2019.
[32] Enmendada a través de las leyes siguientes: Ley Núm. 65 de 23 de diciembre de 2021, Ley Núm. 100 de 30 de agosto de 2023, Ley Núm. 12 de 10 de enero de 2024, Ley Núm. 16 de 10 de enero de 2024, Ley Núm. 52 de 18 de marzo de 2024, Ley Núm. 75 de 10 de mayo de 2024, Ley Núm. 159 de 13 de agosto de 2024 y Ley Núm. 24 de 2 de junio de 2025.

plantear cierta ambigüedad con el artículo 2.02 de la propia Ley de Armas que incluye entre sus requisitos un expediente negativo de antecedentes penales la especificidad deal artículo 2.09 sobre los fundamentos para rehusar expedir licencias nos persuade a concluir que erro el foro primario al no desestimar la reclamación contra el Estado quien en todo momento actuó conforme los poderes delegados mediante la Ley de Armas. Abona a nuestra conclusión el que para descubrir el verdadero sentido de una ley cuando sus expresiones son ambiguas, se considerará su razón y su espíritu, mediante la atención a los objetivos del legislador, a la causa o el motivo para dictarla.  No albergamos duda, que la Ley de Armas permite a la Oficina de Licencias rehusar expedir una licencia para poseer y portar armas a, entre otros, aquella persona que como la parte recurrida haya cometido un delito menos grave que conlleve violencia, aunque posea un Certificado Negativo de Antecedentes Penales.

Por último, ante dos disposiciones legales antagónicas, debe prevalecer la última voluntad legislativa. La Ley de Armas es posterior a la Ley de Certificado. Reiteradamente el Tribunal Supremo de Puerto Rico ha resuelto que al interpretar disposiciones estatutarias no podemos imputarle al legislador el desconocimiento de las leyes ni presumir que realiza actos fútiles y sin sentido. *Talcott Inter-Amer v. Registrador*, 104 DPR 254, 262 (1975); *Flamboyán Gardens v. Junta de Planificación*, 103 DPR 884, 888 (1975).

A razón de lo cual ejerciendo nuestra función adjudicativa en la interpretación de las leyes antes descritas concluimos que procede validar el rechazo de la Oficina de Licencias a expedir la licencia al recurrente conforme el artículo 2.09 de la Ley de Armas, supra.

**-IV-**

Causa por la cual, expedimos el certiorari y revocamos la determinación recurrida desestimando a su vez la reclamación contra el Estado porque la reclamación no justifica la concesión de un remedio.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones