ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| ALDO BRITO RODRÍGUEZ<br><br>Parte Recurrente<br><br><br>v.<br><br><br><br>COMISIÓN APELATIVA DEL SERVICIO PÚBLICO<br><br>Parte Recurrida | KLRA202400582 | *Revisión Judicial,* procedente de la Comisión Apelativa del Servicio Público<br><br><br>Caso Núm. SR-2024-001<br><br><br><br><br>Sobre:<br>Retención |
|---|---|---|

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de noviembre de 2024.

Compareció ante este Tribunal la parte recurrente, el Lcdo. Aldo Brito Rodríguez (en adelante, "licenciado Brito" o "Recurrente"), mediante recurso de revisión judicial presentado el 18 de octubre de 2024. Nos solicitó la revocación de la determinación tomada por la Comisión Apelativa del Servicio Público (en adelante, "CASP" o "Recurrida") el 28 de agosto de 2024, consistente en la suspensión definitiva de empleo y sueldo del licenciado Brito de diez (10) días laborables. Dicho dictamen fue objeto de una "**Comparecencia Especial en Reconsideración**", la cual fue declarada "No Ha Lugar" el 18 de septiembre de 2024.

Por los fundamentos que expondremos a continuación, se *confirma* la determinación recurrida.

**I.**

El licenciado Brito es oficial examinador en el servicio de carrera en la CASP desde el año 2011 y ha laborado en el servicio público desde hace 17 años. En la actualidad, desempeña el cargo de "Oficial Examinador Licenciado" y desde el 1 de enero de 2021, es el único empleado de la

Número Identificador
SEN2024_____

CASP que pertenece a dicha clasificación. Lo anterior significa que la División Legal de la referida entidad se encuentra integrada por dos (2) empleados: (1) una Directora y (2) el Recurrente. Alrededor del mes de enero de 2023, la CASP implementó un conjunto de normas de ejecución interna de la División Legal de dicha entidad administrativa. La misma se compone de métricas de productividad diseñadas para atender las necesidades operacionales de la Recurrida y para cumplir con su obligación ministerial de adjudicar de manera justa, rápida y diligente las controversias que se le presenten.

El 21 de julio de 2023, mediante carta, la CASP le notificó al licenciado Brito su intención de imponerle una amonestación formal consistente en una suspensión definitiva de empleo y sueldo de diez (10) días laborables, por no cumplir con los parámetros de productividad establecidos por la Recurrida para los oficiales examinadores de la División Legal. Allí, se le hizo referencia al Informe de Productividad suscrito por la Directora de la División Legal, Lcda. Alejandra M. Rivera Rodríguez, del cual se desprende que el Recurrente no cumplió con la expectativa de llevar a cabo su labor con precisión y exactitud dentro del tiempo establecido, así como que incumplió con los términos de entrega y las fechas límites. En la aludida comunicación, se le indicó que incurrió en tres (3) ofensas: (1) desempeño deficiente, desidia o retraso en seguir las instrucciones del supervisor; (2) insubordinación; e (3) incumplir con las normas establecidas mediante ley, reglamentos y órdenes administrativas que rigen la CASP. Es menester destacar que, dentro de dichas ofensas, el Informe detalló seis (6) infracciones presuntamente cometidas por el Recurrente.

Así pues, a través de dicha comunicación, se le advirtió al licenciado Brito de su derecho de solicitar la celebración de una vista informal, previo a la aplicación de la sanción dentro de los próximos diez días calendario, o de someter por escrito su versión de los hechos y/o para mostrar causa por la cual no se le debía imponer la medida disciplinaria. En respuesta a ello, el 28 de julio de 2023, el licenciado Brito le cursó al Presidente de la CASP

una comunicación en la que le notificó su intención de presentar por escrito su impugnación formal a la carta de intención que le fue notificada.

El 15 de agosto de 2023, el licenciado Brito presentó un escrito ante la CASP mediante el cual, entre otras cosas, impugnó la jurisdicción de la CASP de evaluar y establecer métricas de desempeño desde la aprobación de la Ley Núm. 8-2017, *infra*. Sostuvo que había sido víctima de un supuesto patrón de acoso laboral y daños y perjuicios por parte de varios funcionarios de la CASP. El 21 de agosto de 2023, la Comisionada Asociada de la Recurrida, Lcda. Maribel Rodríguez Ramos, fue designada como oficial para elaborar un informe con recomendaciones sobre las infracciones imputadas al licenciado Brito por parte de la Recurrida.

Entretanto, el 26 de septiembre de 2023, el licenciado Brito presentó ante el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "TPI"), una "**Demanda**" de interdicto preliminar y permanente y sentencia declaratoria en contra de la Recurrida, bajo el caso núm. SJ2023CV09115. En la misma, solicitó que se expidiera el remedio extraordinario para que se paralizara el procedimiento disciplinario iniciado por la CASP en contra del Recurrente y que desembocó en la presentación del recurso de epígrafe. Allí también reprodujo los planteamientos relativos a la falta de jurisdicción de la Recurrida para evaluar y establecer métricas de desempeño propias e imponer una medida disciplinaria en su contra. Su argumento se basó en que, al amparo de la Ley Núm. 8-2017, *infra*, era la Oficina de Administración y Transformación de los Recursos Humanos (en adelante, "OATRH") quien poseía la autoridad en ley para crear y diseñar métricas de productividad de los empleados del servicio público. Asimismo, el licenciado Brito solicitó la paralización del procedimiento disciplinario iniciado ante la CASP hasta que el TPI se expresara sobre la jurisdicción de la Recurrida.

Tras varios trámites procesales, el TPI dictó *Sentencia* el 3 de noviembre de 2023 mediante la cual concluyó que el licenciado Brito no logró satisfacer los elementos necesarios para establecer que se deba conceder un remedio interdictal ni declaratorio, dirigido a detener

inmediatamente un procedimiento administrativo en curso. Ante tales circunstancias, desestimó el caso al entender que no era posible colegir que se justificara preterir el procedimiento administrativo ante la CASP mediante el referido recurso extraordinario. Ello independientemente de los méritos que pudieran tener sus planteamientos con respecto al alcance de la Sección 6.6 de la Ley Núm. 8-2017, *infra*, y la validez sustantiva de la medida disciplinaria que la CASP propuso contra el Recurrente; ni en cuanto a la alegada parcialidad de la oficial examinadora asignada al caso.

Así las cosas, el 7 de noviembre de 2023, la oficial examinadora designada emitió un *Informe de la Oficial Examinadora*. El 1 de febrero de 2024, la CASP suscribió la determinación aquí impugnada, mediante la cual acogió las recomendaciones consignadas en el referido *Informe*. Allí se expresó que se había hallado que el licenciado Brito había infringido todas las ofensas descritas en la carta de intención y le notificó a éste la imposición de una amonestación formal consistente en una suspensión definitiva de empleo y sueldo por diez (10) días laborables desde el 17 al 28 de junio de 2024. Asimismo, se le apercibió al Recurrente de su derecho a presentar una revisión administrativa o apelación ante un Panel de Revisión de la CASP, en un término de quince (15) días, contados a partir de la notificación de dicha comunicación, de conformidad con el "Reglamento de Procedimientos para Atender Reclamaciones del Personal de la Comisión Apelativa del Servicio Público", *infra*. El 14 de febrero de 2024, el Recurrente le cursó a CASP cierta carta intitulada "**Impugnación a imposición de Acción Disciplinaria: Suspensión de Empleo y Sueldo de 10 Días Laborales**" mediante la cual cuestionó en su totalidad la medida disciplinaria de suspensión de empleo y sueldo, argumentó que la CASP carece de jurisdicción y expresó que, en caso de que el Tribunal determine que la CASP posee jurisdicción, ejercerá su derecho al descubrimiento de prueba y a una vista formal en su fondo. En consonancia con lo anterior, la Recurrida le concedió un término de treinta (30) días al licenciado Brito para que presentara un memorando de derecho argumentando su alegación de falta de jurisdicción de la CASP para atender su reclamo.

Inconforme con la determinación emitida el 1 de febrero de 2024, el licenciado Brito recurrió ante este Tribunal el 4 de marzo de 2024 mediante un recurso de revisión judicial, bajo el alfanumérico KLRA202400113, en el que señaló que la CASP erró al: (1) imponerle la suspensión sin sueldo de diez (10) días; (2) determinar que tenía jurisdicción para crear métricas de productividad y aplicar su Reglamento Disciplinario y (3) al ordenarle a comparecer ante un panel interno para apelar la referida suspensión. Tras realizar un análisis minucioso y reflexivo del expediente, este Tribunal determinó que, amparado en la doctrina de agotamiento de remedios, carecía de jurisdicción, puesto que el proceso administrativo relacionado con la medida disciplinaria que se le impuso al licenciado Brito no había culminado.

Finalmente, y tras varios trámites procesales, el 28 de agosto de 2024 la CASP emitió una *Resolución* a través de la cual determinó que la Ley Núm. 8-2017, *infra*, no dispuso la derogación inmediata de los planes de clasificación de las agencias ni de sus sistemas de evaluación y reglamentos disciplinarios, por lo que éstos se mantienen vigentes en el periodo de transición del Gobierno de cambiar el concepto de administrador individual a empleador único. Asimismo, concluyó que cada autoridad nominadora tiene el deber de imponer la acción disciplinaria que estime necesaria. Basado en lo anterior, desestimó el recurso incoado por el licenciado Brito y sostuvo su determinación respecto a la suspensión de empleo y sueldo de diez (10) días. Dicha *Resolución* fue objeto de una "**Comparecencia Especial en Reconsideración**", la cual fue declarada "No Ha Lugar" el 18 de septiembre de 2024.

Insatisfecho con esta decisión, el licenciado Brito recurrió ante nos mediante el recurso de revisión judicial que nos ocupa y le imputó a la CASP la comisión de los siguientes errores:

**PRIMER ERROR:**

**Erró la Comisión Apelativa del Servicio Público al determinar que tenía jurisdicción para crear métricas de productividad y aplicar su Reglamento Disciplinario por el alegado incumplimiento de dichas métricas, usurpando la autoridad de la Oficina de Administración y**

**Transformación de los Recursos Humanos (OATRH) bajo la Ley 8-2017.**

**SEGUNDO ERROR:**

**La CASP abusó de discreción y violó el debido proceso de ley del querellante al quitarle al querellante su derecho a una Vista Formal bajo LPAU, resolviendo que este renunció a su derecho a Vista Formal, cuando en todo momento este impugno la jurisdicción ante el Panel Revisor y SIEMPRE se reservó el derecho a una Vista Formal, sujeto a la adjudicación final y firme de la controversia jurisdiccional.**

**TERCER ERROR:**

**Erró la Comisión Apelativa del Servicio Público al ordenar al Lcdo. Aldo Brito Rodriguez comparecer ante un Panel Revisor para apelar su suspensión de 10 días por ser este uno ultra vires, cuya validez fue derogada bajo la Ley 8-2017, y además, no ser un foro imparcial y tener conflictos de intereses con la parte querellada-recurrida.**

El 7 de noviembre de 2024, la CASP compareció mediante "**Alegato en Oposición a Revisión de Decisión Administrativa**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

La Sección 7 del Artículo II de la Constitución de Puerto Rico le asegura a todo ciudadano que no será privado de su propiedad o libertad, sin un debido proceso de ley. 1 LPRA Art. II, Sec. 7. Esta garantía proviene de las Enmiendas V y XIV de la Constitución de los Estados Unidos de América. La cláusula del debido proceso de ley en la jurisdicción federal tiene como fin ulterior evitar que el Gobierno utilice sus poderes como un instrumento de subyugación. Davidson v. Cannon, 474 US 344, 348 (1986). También se implantó para impedir que dichas facultades sean manejadas de manera arbitraria e irrazonable. Daniels v. Williams, 474 US 327, 331 (1986). Existen dos dimensiones de este principio cardinal: (1) la procesal y (2) la sustantiva. Rodríguez Rodríguez v. E.L.A., 130 DPR 562, 575 (1992).

Tanto en la jurisdicción local como en la federal, la vertiente sustantiva del debido proceso de ley se enfoca en proteger los derechos fundamentales de los individuos. *Véase*, Marina Ind., Inc. v. Brown Boveri Corp., 114 DPR 64, 81 (1983). Apoyado en lo anterior, se ha recalcado que

el Estado no puede interferir con los intereses propietarios y libertarios de un individuo de manera irracional, injustificada o caprichosa. En su aspecto procesal, esta disposición le atribuye el deber al Estado de garantizarle a toda persona que en aquellas instancias en las que se pretenda intervenir con la libertad o propiedad de esta última, el proceso sea uno justo, equitativo e imparcial. López Vives v. Policía de Puerto Rico, 118 DPR 219, 231 (1987).

Para que surta efecto la protección que brinda este derecho constitucional en su ámbito procesal, tiene que estar en peligro un interés individual ya sea libertario o propietario. "Una vez cumplido este requisito, corresponde determinar cuál es el procedimiento exigido (what process is due)". Rodríguez Rodríguez v. E.L.A., *supra*, pág. 578. Dependiendo del contexto, "diversas situaciones pueden requerir diferentes tipos de procedimientos, pero siempre persiste el requisito general de que el proceso gubernamental sea justo e imparcial". Íd.

En armonía con lo anterior, en Mathews v. Eldridge, 424 US 319 (1976), el Tribunal Supremo de los Estados Unidos estableció los criterios que deben ser examinados a la hora de determinar el procedimiento adecuado para privarle a una persona de algún derecho de propiedad o libertad. Éstos son los siguientes: "(1) los intereses individuales afectados por la acción del gobierno; (2) el riesgo de una determinación errada que prive al individuo del interés protegido mediante el proceso utilizado y el valor probable de garantías adicionales o diferentes, y, (3) el interés gubernamental protegido con la acción sumaria y la viabilidad de usar métodos alternos". Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 DPR 881, 888 (1993).

Desde esta perspectiva, el debido proceso de ley exige que en todo procedimiento adversativo se cumplan ciertas formalidades, a saber: (1) la notificación adecuada de la reclamación instada; (2) que el proceso se lleve a cabo ante un juzgador imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; (5) estar asistido por un abogado, y (6) que la decisión sea basada en el expediente. Íd., pág. 889. Ahora bien, aun cuando esta norma constitucional está cimentada en la protección de los derechos fundamentales que ostenta toda persona en nuestra jurisdicción, su aplicación responde a consideraciones prácticas y circunstanciales. Domínguez Talavera v. Tribunal Superior, 102 DPR 423, 428 (1974). De ahí que se disponga que el derecho a ser oído debe ser en un tiempo significativo y de una manera apropiada. Mathews v. Eldridge, *supra*, pág. 333.

**B.**

Es principio elemental de hermenéutica que a toda ley se le dará la interpretación que mejor responda a los propósitos que persigue. Los tribunales debemos interpretar la ley como un ente armónico, de manera que se les dé sentido racional a sus disposiciones y supliendo las posibles deficiencias cuando esto fuere necesario. Sucn. Álvarez v. Secretario de Justicia, 150 DPR 252, 276 (2000). Es por ello que sólo hay una regla que es "absolutamente invariable", a saber, que debe hacerse cumplir la verdadera intención y deseo del poder legislativo. Pueblo v. Zayas Rodríguez, 147 DPR 530, 549 (1999). "En otras palabras, la regla de oro en materia de interpretación de leyes es que el objeto principal de todas las reglas de hermenéutica no es conseguir un objetivo arbitrario preconcebido, sino dar efecto al propósito del legislador." Íd.

El Artículo 19 del Código Civil de Puerto Rico dispone que "[c]uando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu". 31 LPRA sec. 5341. No obstante, los tribunales estamos facultados a interpretar las leyes cuando, entre otras

cosas, éstas no son claras o concluyentes sobre algún punto en particular, cuando se deba suplir alguna laguna contenida en ésta o cuando la justicia así lo requiere. Alonso García v. S.L.G., 155 DPR 91, 98-99 (2001). Así pues, cuando las expresiones de una ley sean ambiguas, se considerará su razón mediante la atención a los objetivos del legislador, a la causa o el motivo para dictarla. 31 LPRA sec. 5342. En esa misma línea doctrinal, debemos utilizar todos los medios que estén a nuestro alcance para concretizar la intención del legislador al aprobar un estatuto.

En el ejercicio de interpretación legislativa, los foros judiciales estamos compelidos a examinar las motivaciones sociales que inspiraron al legislador al aprobarlas. Col. Ópticos P.R. v. Pearle Vision Center, 142 DPR 221, 228 (1997). En el proceso de imprimirle sentido a una ley, los tribunales no podemos perder de perspectiva la necesidad de que el resultado al que se arriba se ajuste al examinado por el legislador al promulgarla. Ranger American v. Loomis Fargo, 171 DPR 670, 682 (2007). En conclusión, "[l]as disposiciones de una ley deben ser examinadas e interpretadas de modo que no conduzcan a resultados absurdos, sino a unos armoniosos. Pardavco, Inc. v. Srio. de Hacienda, 104 DPR 65, 71 (1975).

**C.**

El Plan de Reorganización Núm. 2-2010, según enmendado, mejor conocido como el "Plan de Reorganización de la Comisión Apelativa del Servicio Público" (en adelante, "Ley Núm. 26-2010"), fue promulgado con el fin ulterior de promover una estructura gubernamental que responda a las necesidades reales de los ciudadanos puertorriqueños y que, a su vez, contribuya a una mejor calidad de vida para éstos. 3A LPRA Ap. XIII, Art. 2. Asimismo, dicha legislación tiene como objetivo impulsar la optimización de la eficacia y eficiencia en la gestión gubernamental, acelerar los procesos de prestación de servicios, disminuir el gasto público, asignar los recursos de forma estratégica, facilitar el acceso de los ciudadanos a los servicios públicos y simplificar las normativas que regulan la actividad privada.

Para cumplir con dichos propósitos, el Plan de Reorganización Núm. 2-2010 creó un organismo cuasi-judicial, especializado en asuntos obrero-

patronales conocido como la CASP, el cual es el encargado de atender los casos laborales, de administración de recursos humanos y de querellas para los empleados cobijados bajo la Ley Núm. 45 de 25 de febrero de 1998, según enmendada, conocida como la "Ley de Relaciones del Trabajo del Servicio Público" y la Ley Núm. 184 del 3 de agosto de 2004, según enmendada, conocida como la "Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico", derogada por la Ley Núm. 8-2017, *infra*. 3A LPRA Ap. XIII, Art. 4. Entre las facultades, funciones y deberes de la CASP, se encuentran las siguientes: (1) **aprobar la reglamentación necesaria para garantizar el cumplimiento del plan**; (2) realizar las vistas públicas y privadas, reuniones, encuestas e investigaciones que sean necesarias y adecuadas; (3) **atender toda querella o apelación que se presente oportunamente y que concierna a su jurisdicción** y (4) asegurar la neutralidad de los funcionarios y empleados de la Comisión en todos sus procedimientos. 3A LPRA Ap. XIII, Art. 8. En esta misma línea, la referida ley define el término administrador individual como la agencia u organismo que forma parte del sistema de administración de recursos humanos y la autoridad nominadora como todo jefe de agencia con facultad legal para efectuar nombramientos en la agencia que supervisa. 3A LPRA Ap. XIII, Art. 3 (b) y (e).

Respecto a los casos o controversias que pueden ser atendidos por este foro cuasi-judicial, el Plan de Reorganización Núm. 2-2010 dispone que la CASP, quien ostenta el estatus de administrador individual, tendrá jurisdicción primaria exclusiva sobre las apelaciones surgidas como consecuencia de los administradores individuales y los municipios, en las siguientes instancias:

a) cuando un empleado, dentro del Sistema de Administración de los Recursos Humanos, no cubierto por la Ley Núm. 45-1998, según enmendada, conocida como la "Ley de Relaciones del Trabajo del Servicio Público", alegue que una acción o decisión le afecta o viola cualquier derecho que se le conceda en virtud de las disposiciones de la Ley 8-2017, según enmendada, la Ley 107- 2020, según enmendada, conocida como "Código Municipal de Puerto Rico", los reglamentos que se aprueben para instrumentar dichas leyes, o de los reglamentos adoptados por los Administradores

b) Individuales para dar cumplimiento a la legislación y normativa aplicable;

b) cuando un ciudadano alegue que una acción o decisión le afecta su derecho a competir o ingresar en el Sistema de Administración de los Recursos Humanos, de conformidad al principio de mérito;

c) cuando un empleado irregular alegue que la autoridad nominadora se ha negado injustificadamente a realizar su conversión a empleado regular de carrera, según dispone la Ley Núm. 110 de 26 de junio de 1958, según enmendada, conocida como "Ley de Empleados Irregulares";

d) cuando un Administrador Individual alegue que una acción, omisión o decisión de la Oficina es contraria a las disposiciones generales de la Ley Núm. 184 de 3 de agosto de 2004, según enmendada, en las áreas esenciales al principio de mérito.

e) la Comisión tendrá jurisdicción sobre el personal docente y clasificado del Departamento de Educación y el personal civil de la Policía de Puerto Rico, que no estén sindicados bajo la Ley Núm. 45 de 25 de febrero de 1998, según enmendada;

f) ) la Comisión podrá tener jurisdicción apelativa voluntaria sobre los empleados no organizados sindicalmente de aquellas agencias excluidas de la aplicación de la Ley Núm. 184 de 3 de agosto de 2004, según enmendada, y las corporaciones públicas que operen como negocio privado que se sometan voluntariamente al proceso apelativo y adjudicativo de la Comisión. El procedimiento y costo para que puedan acogerse a esta jurisdicción se establecerá, mediante reglamento; g) cualquier asunto proveniente u originado de la administración de los recursos humanos no cubierto en otras leyes o convenios colectivos. 3A LPRA Ap. XIII, Artículo 12.

No obstante lo anterior, el Artículo 17 del Plan de Reorganización Núm. 2-2010, *supra*, dispone que el Presidente de la CASP, determinará mediante reglamento el procedimiento a seguir para gestionar las reclamaciones del personal de la Comisión que se originen de la relación obrero patronal del personal de la Comisión con la misma. 3A LPRA Ap. XIII, Art. 17. En armonía con dicha autoridad delegada, el 1 de diciembre de 2011, el Presidente de la CASP promulgó el "Reglamento Sobre los Procedimientos para Atender Reclamaciones del Personal de la Comisión Apelativa del Servicio Público" (en adelante, "Reglamento sobre Reclamaciones"), el cual es aplicable a las solicitudes de revisión administrativa de las determinaciones de dicha autoridad nominadora.

El mismo dispone que el panel de revisión de la Comisión estará compuesto por tres miembros, a saber: (1) un(a) comisionado(a) asociado(a); (2) un(a) representante del área de administración y (3) un(a) oficial examinador(a) o un(a) interventor(a) neutral. Sec. 1 del Artículo 5 del

Reglamento sobre Reclamaciones, *supra*. Entre las atribuciones del Panel de Revisión se incluyen las siguientes: (1) atender de manera objetiva e imparcial las solicitudes de revisión administrativa; (2) definir sus propias normas internas sobre su funcionamiento y (3) sostener, modificar o revocar la decisión de la autoridad nominadora. Sec. 4 del Artículo 5 del Reglamento sobre Reclamaciones, *supra*. Respecto al personal del servicio de carrera, el aludido Reglamento establece que dichos empleados deben solicitar la revisión administrativa dentro del término de quince (15) días, a partir de la fecha de la notificación de la acción tomada. Sec. 3. del Artículo 5 del Reglamento sobre Reclamaciones, *supra.*

**D.**

Como parte del poder de razón de estado, la Asamblea Legislativa aprobó la Ley Núm. 8-2017*,* según enmendada, mejor conocida como "Ley para la Administración y Transformación de los Recursos en el Gobierno de Puerto Rico" (en adelante, "Ley Núm. 8-2017"), con el propósito de declarar un estado crítico económico y fiscal que requirió unos cambios en la administración de los recursos humanos de las agencias cubiertas por el estatuto. Así pues, se declara como política pública del Gobierno de Puerto Rico lo siguiente: (1) la centralización de la administración de los recursos humanos de todas las agencias e instrumentalidades del Gobierno Central; (2) que los empleados públicos sean empleados del Gobierno Central y no de las agencias; (3) la unificación de los planes de clasificación y retribución de la administración central; (4) el establecimiento de un sistema de evaluación de personal uniforme para los empleados públicos; y (5) la creación de un registro electrónico sobre los resultados de las evaluaciones y su cumplimiento, entre otras cosas. 3 LPRA sec. 1469a.

Por su parte, la Sección 4.3 (2) del Artículo 4 de la Ley Núm. 8-2017, *supra*, dispone las funciones y facultades de la OATRH, como ente en el cual se centralizaron las facultades del Sistema de Administración y Transformación de los Recursos Humanos del Gobierno de Puerto Rico. Específicamente, se dispone que la OATRH tiene como función "[c]entralizar el sistema de administración de personal, eliminando de la

categoría de administradores individuales a todas aquellas agencias e instrumentalidades públicas del Gobierno de Puerto Rico". 3 LPRA sec. 1470b (o).

A la luz de lo anterior, la Sección 6.6 de la Ley Núm. 8-2017, *supra*, dispone lo siguiente:

[…]

2. **La Oficina tendrá la obligación de crear y diseñar el sistema de evaluación de desempeño, productividad, ejecutorias y cumplimiento eficaz con los criterios establecidos, utilizando métricas cuantificables para los empleados**. **Las agencias e instrumentalidades vendrán obligadas a evaluar a sus empleados utilizando el sistema de evaluación sobre desempeño que establezca la Oficina**.

3. **Cuando la conducta de un empleado no se ajuste a las normas y requerimientos establecidos, cada agencia deberá tomar las medidas correctivas o acciones disciplinarias necesarias y adecuadas**. Entre otros, se podrá considerar la amonestación verbal, reprimenda escrita, la suspensión de empleo y sueldo o la destitución.

4. La Autoridad Nominadora sólo podrá suspender de empleo y sueldo o destituir a cualquier empleado de carrera por justa causa, previa notificación de formulación de cargos por escrito y apercibimiento de su derecho a solicitar vista previa conforme a los procesos de disciplina progresiva como se establece en el reglamento.

5. **Las Autoridades Nominadoras tendrán la obligación de imponer la acción disciplinaria que proceda a cualquier funcionario o empleado que intencionalmente, por descuido o negligencia incumpla cualquiera de las disposiciones de esta Ley**.
[…]

8. Los deberes que a continuación se detallan constituirán **obligaciones mínimas esenciales requeridas a todo empleado**, por cuyo incumplimiento se deberán tomar acciones disciplinarias:
[…]

c. **Realizar eficientemente y con diligencia las tareas y funciones asignadas a su puesto y otras compatibles con éstas que se le asignen**.

d. **Acatar aquellas órdenes e instrucciones de sus supervisores compatibles con la autoridad delegada en éstos y con las funciones, actividades y objetivos de la agencia en donde trabaja**. 3 LPRA sec. 1472f (énfasis suplido).

Cuando la ley alude a una autoridad nominadora, se refiere a cualquier jefe de agencia que posee la facultad legal para hacer nombramientos para puestos en el Gobierno de Puerto Rico. 3 LPRA sec.

1469b. Así pues, de las transcritas disposiciones estatutarias se desprende que mediante la Ley Núm. 18-2017, se transfirió de las agencias administrativas a la OATRH la facultad de elaborar los sistemas de evaluación de desempeño, productividad, ejecutorias y cumplimiento eficaz con los criterios establecidos. Respecto al proceso de transición de estas facultades, el Artículo 15 de la Ley Núm. 8-2017, *supra*, establece que le corresponde a la Oficina de Transformación y Administración de los Recursos Humanos preparar el Plan de Clasificación y Retribución Uniforme en lo que a cada cual le compete. 3 LPRA sec. 477b. Asimismo, dispone que mientras la referida oficina no **apruebe sus reglamentos y emita sus memorandos se mantienen en vigor aquellos reglamentos y memorandos de entendimiento de la Oficina de Capacitación y Asesoramiento en Asuntos Laborales y de Administración de los Recursos Humanos** (OCALARH) que se encuentren vigentes al momento de la aprobación de la Ley Núm. 8-2017. Íd.

**E.**

Es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos están llamados a abstenerse de intervenir en las decisiones administrativas, ya que éstas poseen una presunción de legalidad y corrección. ECP Incorporated v. OCS, 205 DPR 268, 281 (2020); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Cónsono con ello, se ha resuelto que las decisiones de las agencias administrativas gozan de la mayor deferencia por los tribunales. Oficina de Ética Gubernamental v. Martínez Giraud, 210 DPR 79, 88-89 (2022). Ello debido a que dichos entes gubernamentales son los que poseen el conocimiento especializado y experiencia en los asuntos que les son encomendados. Super Asphalt v. AFI, 206 DPR 803, 819 (2021). En los casos de revisión judicial, "[e]l criterio a aplicarse no es si la decisión administrativa es la más razonable o la mejor al arbitrio del foro judicial; es, repetimos, si la determinación administrativa, en interpretación de los reglamentos y las leyes que le incumbe implementar, es una razonable". Rivera Concepción v. A.R.Pe, 152 DPR 116, 124 (2000).

La Sección 4.5 de la LPAU, dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". 3 LPRA sec. 9675. Así pues, la intervención judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba y (3) si las conclusiones de derecho del organismo administrativo son correctas. P.R.T.C. Co. v. J. Reg. Tel. de P.R., 151 DPR 269, 281 (2000). Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: cuando no está basada en evidencia sustancial, cuando el organismo administrativo ha errado en la aplicación de la ley y cuando ha mediado una actuación irrazonable o ilegal. T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 80 (1999).

Las determinaciones de hechos de los organismos y agencias administrativas tienen a su favor una presunción de regularidad y corrección. Henríquez v. Consejo Educación Superior, 120 DPR 194, 210 (1987). De manera que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si éstas están sostenidas por evidencia sustancial que surja del expediente administrativo. Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 DPR 70, 75 (2000).

Según lo ha definido el Tribunal Supremo en diversas ocasiones, evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 687 (1953). Por ello, quien impugne las determinaciones de hechos de una agencia administrativa tiene el deber de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. Com. Vec. Pro-Mej., Inc. v. J.P., 147 DPR 750, 761 (1999).

Además, debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Rebollo v. Yiyi Motors, 161 DPR 69, 76-77 (2002).

Las conclusiones de derecho, tal y como surge de la Sección 4.5 de la LPAU, *supra*, pueden ser revisadas en todos sus aspectos. 3 LPRA sec. 9675. Sin embargo, esto no significa que, al ejercer su función revisora, podamos descartar liberalmente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. "Al evaluar los casos es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa". Adorno Quiles v. Hernández, 126 DPR 191, 195 (1990).

El foro judicial podrá sustituir el criterio del organismo administrativo por el propio únicamente en aquellas ocasiones que no encuentre una base racional que fundamente la actuación administrativa. No obstante, es axioma judicial que, ante la prueba pericial y documental, el tribunal revisor se encuentra en igual posición que el foro recurrido y, por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio. Dye-Tex de P.R., Inc. v. Royal Ins. Co., 150 DPR 658, 662 (2000).

Sin embargo, la deferencia judicial en la revisión de determinaciones administrativas no conlleva la renuncia de este Tribunal a su función revisora. Simplemente, define el carácter limitado de la función revisora a casos apropiados. La deferencia reconocida no equivale a la dimisión de la función revisora de este foro apelativo intermedio en instancias adecuadas y meritorias, como resulta ser cuando la agencia ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., 143 DPR 85, 94 (1987).

**III.**

En el presente caso, el licenciado Brito nos solicitó la revocación de la determinación de la CASP, a través de la cual se le suspendió de empleo y sueldo por el término de diez (10) días laborables.

El primero y tercer señalamiento de error esgrimidos están estrechamente relacionados, por lo que se abordarán de manera conjunta en la discusión. En síntesis, el Recurrido plantea que la CASP erró al determinar que tenía jurisdicción para crear métricas de productividad y aplicar su reglamento disciplinario y al ordenarle a comparecer ante un panel revisor para apelar su suspensión de diez (10) días. No nos convence su postura. Veamos.

Surge del expediente ante nuestra consideración que el licenciado Brito es oficial examinador en el servicio de carrera de la CASP desde el año 2011 y que actualmente ocupa el puesto de "Oficial Examinador Licenciado". El 21 de julio de 2023, la CASP le remitió al Recurrido cierta carta intitulada: "**Carta de Intención sobre Imposición de Acción Disciplinaria: Suspensión de Empleo y Sueldo de Diez (10) Días Laborables**", por medio de la cual se le informó la intención de imponerle una amonestación formal consistente en una suspensión definitiva de diez (10) días. Dicha carta de intención señala seis infracciones atribuidas al licenciado Brito: (1) retraso o fallo injustificado para seguir instrucciones; (2) negligencia, descuido o falta de interés; (3) producir trabajo deficiente en calidad o cantidad; (4) negarse a observar los reglamentos, ordenes, normas o procedimientos establecidos; (5) negarse a acatar órdenes administrativas; (6) no cumplir con las normas establecidas mediante Ley, Reglamentos y Órdenes Administrativas.[1] En detalle, se le comunicó lo siguiente:

> Durante el periodo que comprende del 23 de enero al 31 de mayo de 2023, usted no ha cumplido con los parámetros de productividad establecidos en la División Legal de la Comisión para el año 2023, respecto a los criterios de Rapidez y Diligencia (cantidad), Aprendizaje y Planificación y Organización. Conforme al Informe de Productividad, estos criterios fueron resaltados en la Evaluación de Fin de Ciclo para el periodo del 20 de septiembre de 2021 al 31 de diciembre de 2022 como áreas para mejorar en su ejecución, debido a que obtuvo un Nivel de Ejecución de Bajo Promedio. En específico, en el Formulario de Evaluación para el periodo del 20 de septiembre de 2021 al 31 de diciembre de 2022, se enumeraron una serie de recomendaciones para lograr una mejor ejecución de sus funciones y cumplir con los parámetros de productividad de la División Legal, entre las que se encontraban las siguientes: (1) actualizar diariamente

---

[1] *Vease*, Apéndice del Recurso de Revisión Judicial, págs. 1-14.

el informe sobre el estado de los procedimientos de los casos asignados para facilitar su seguimiento (follow-up); (2) aumentar la cantidad de expedientes examinador de manera semanal; (3) presidir más vistas públicas; (4) resolver todas las mociones que presenten las partes, emitiendo informes, resoluciones y órdenes.[2]

Respecto a su derecho a solicitar una vista informal, la carta disponía lo que sigue:

> **Usted tiene derecho a solicitar la celebración de una vista informal, previa a la aplicación de la sanción, y a estar asistido por abogado. Para ello, usted deberá informar dentro de los próximos diez (10) días calendario, contados a partir de la fecha en que reciba la notificación, si solicita o no la vista informal mediante comunicación escrita al efecto dirigida al Presidente. De lo contrario, podrá someter por escrito, si así lo prefiere, dentro del término de treinta (30) días calendario de recibida la comunicación, su versión sobre los hechos o mostrar causa por la cual no debe disciplinarse**. Si usted opta por presentar por escrito su versión sobre los hechos o mostrar causa por la cual no debe disciplinarse, el Presidente nombrara un Oficial, dentro de un término de cinco (5) días laborables con posterioridad a la presentación de la versión del empleado. El Oficial deberá presentar un informe con sus recomendaciones dentro de los noventa (90) días calendario posterior a su designación. Lo anterior de conformidad con las disposiciones establecidas en el Plan de Reorganización 2-10 y el Reglamento de Normas de Conducta y Procedimiento Disciplinario.[3]

En respuesta a ello, el 28 de julio de 2023, el Recurrente envió una comunicación al Presidente de la CASP informándole que presentaría por escrito su objeción a la carta y el 15 de agosto de 2023, a través de su representación legal, expuso su posición al respecto. Luego de varios tramites procesales, el 2 de febrero de 2024, se le notificó la carta titulada "**Imposición de Acción Disciplinaria: Suspensión de Empleo y Sueldo de 10 Días Laborables**" a través de la cual el Presidente de la CASP le informó que decidió aceptar la recomendación de la Lcda. Alejandra M. Rivera Rodríguez, consistente en la suspensión definitiva de empleo y sueldo.

Entretanto, el 14 de febrero de 2024, el licenciado Brito mediante carta cuestionó la medida disciplinaria impuesta en su contra y argumentó que la CASP carece de jurisdicción para atender la controversia. Además, expresó que ejercería su derecho al descubrimiento de prueba y a una vista

---

[2] *Vease*, Apéndice del Recurso de Revisión Judicial, pág. 10.
[3] *Vease*, Apéndice del Recurso de Revision Judicial, pág. 14 (énfasis suplido).

formal en su fondo. Finalmente, el 28 de agosto de 2024, la CASP emitió una *Resolución* en la que determinó que la Ley Núm. 8, 2017, *supra*, no derogó los reglamentos disciplinarios de las agencias administrativas y sostuvo su determinación respecto a la suspensión de funciones y salario del licenciado Brito.

Conforme hemos adelantado en los acápites anteriores, el Plan de Reorganización Núm. 2-2010, *supra*, se promulgó con el objetivo de establecer una estructura gubernamental que atienda las necesidades de los ciudadanos. 3A LPRA Ap. XIII, Art. 2. En sintonía con esto, creó el organismo cuasi-judicial conocido como la CASP. Este es el ente responsable de gestionar los casos laborales relacionados con la administración de los recursos humanos y de atender las querellas de los empelados amparados por la Ley Núm. 45 de 25 de febrero de 1998, *supra*, y la ley Núm. 184-2004, *supra*, derogada por la Ley Núm. 8-2017, *supra*. 3A LPRA Ap. XIII, Art. 4. Entre sus funciones se encuentra aprobar la reglamentación necesaria para garantizar el cumplimiento del plan y atender las querellas y apelaciones que conciernen su jurisdicción. 3A LPRA Ap. XIII, Art. 8. En lo que respecta a la controversia ante nos, el Artículo 17 de la referida ley establece que el Presidente de la CASP, mediante reglamento, definirá el procedimiento para atender las reclamaciones del personal de la comisión que resulten de su relación laboral con la misma. 3A LPRA Ap. XIII, Artículo 17.

Por su parte, la Ley Núm. 8-2017, *supra*, derogó la Ley Núm. 184-2004, *supra*, para convertir al Gobierno en empleador único y eliminar los administradores individuales, lo cual, le permite la mejor utilización de los recursos humanos donde exista una necesidad apremiante mediante la movilidad, sin que el empleado tenga que renunciar al puesto que ocupa y comenzar de nuevo. Así, se transfirió de las agencias a la OATRH la facultad de elaborar los sistemas de evaluación de desempeño, productividad, ejecutorias y cumplimiento eficaz de los empleados. Es menester aclarar que no existe contención alguna sobre el hecho de que la referida entidad no ha establecido un sistema de evaluación del

desempeño de los empleados que ostente la clasificación del puesto de Oficial Examinador de la CASP con métricas específicas, de conformidad con las funciones que le fueron delegadas en el inciso 2 de la Sección 6.6 de la Ley Núm. 8-2017, *supra*.

En armonía con lo anterior, la Sección 6.6 de la referida ley establece que "[l]as Autoridades Nominadoras tendrán la obligación de imponer la acción disciplinaria que proceda a cualquier funcionario o empleado que intencionalmente, por descuido o negligencia incumpla cualquiera de las disposiciones de esta Ley". 3 LPRA sec. 1472f (5). De igual manera, el Artículo 15 de la Ley Núm. 8-2017, *supra*, indica que, durante el proceso de transición, se conservarán los reglamentos y memorandos hasta que la Oficina de Transformación y Administración de los Recursos Humanos emita los suyos.

Del examen detenido y sosegado de las disposiciones estatutarias en controversia, y luego de efectuar el análisis hermenéutico correspondiente entre las disposiciones legales en disputa, hemos arribado a la conclusión que la Ley Núm. 8-2017, *supra*, no derogó el Artículo 17 del Plan de Reorganización Núm. 2-2010, *supra*. Nótese que la Ley Núm. 8-2017, *supra*, eliminó únicamente a los administradores individuales, delegando en la OATRH la autoridad para diseñar los sistemas de evaluación y métricas. No obstante lo anterior, dicha ley no excluyó a las autoridades nominadoras, las cuales son definidas por ambas leyes como todo jefe de agencia con autoridad o facultad en ley para realizar nombramientos.

En lo aquí concerniente, el Presidente de la CASP es el principal funcionario ejecutivo encargado de todos los asuntos de naturaleza administrativa de dicha comisión, incluyendo el nombramiento de su personal. 3A LPRA Ap. XIII, Art. 9. Por tal razón, para los fines de estos estatutos, el Presidente de la CASP es considerado una autoridad nominadora. Lo anterior implica que, el Artículo 17 del Plan de Reorganización Núm. 2-2010, confiere a la autoridad nominadora de la CASP, es decir a su Presidente, la facultad de establecer mediante

reglamento, el procedimiento que debe seguirse para atender las reclamaciones presentadas por el personal de la Comisión que se deriven de su relación laboral con la misma. Esto es, el Presidente de la CASP posee la facultad en ley para establecer un panel revisor para las determinaciones de la agencia.

De hecho, la propia Ley Núm. 8-2017, *supra*, reconoce que las autoridades nominadoras tienen la obligación de imponer acciones disciplinarias a los empleados o funcionarios que incumplan las disposiciones legales por descuido o negligencia. 3 LPRA sec. 1472f. Por consiguiente, somos de la opinión que la CASP conserva y posee la autoridad necesaria no sólo para evaluar el rendimiento de su personal, sino también para garantizar un procedimiento que permita a los empleados y funcionarios impugnar las determinaciones que consideren injustas.

Pertinente a esta controversia, al examinar el historial legislativo de la Sección 6.6 de la Ley Núm. 8-2017, no hemos hallado expresión alguna que sustente o tienda a establecer que la obligación de la OATRH para adoptar métricas cuantificables y criterios de evaluación de desempeño y productividad de los empleados eliminaría ipso facto la autoridad en ley que ostentan las agencias para adoptar dichas métricas para la evaluación del trabajo de sus empleados. El planteamiento legal esgrimido por el licenciado Brito tendría el efecto de que una agencia del Ejecutivo, en este caso la CASP, tenga que mantener a un empleado que no satisface el nivel de productividad requerido por el mero hecho de que la OATRH no haya adoptado las métricas de evaluación para ese puesto dentro de las agencias. Nótese que dicha es una tarea titánica que implica que se tengan que adoptar criterios de evaluación para cada uno de los puestos que existen en la Rama Ejecutiva.

Por último, la Ley Núm. 8-2017, *supra,* establece que, durante el proceso de transición, se mantendrán en vigor los reglamentos y memorandos vigentes. De esta disposición se puede inferir que los reglamentos internos de las agencias seguirán en efecto hasta que la

OATRH promulgue sus propias regulaciones. Dado a que la referida Oficina aún no ha realizado dicha gestión, el Reglamento Disciplinario y el Reglamento sobre Reclamaciones promulgados por la CASP permanecen en vigor. Esto nos lleva a concluir que la agencia actuó de manera correcta y justificada al utilizar los mencionados reglamentos para evaluar el desempeño laboral del licenciado Brito y llevar a cabo el procedimiento disciplinario de autos. Resolver lo contrario implicaría dejar a la CASP y a otras agencias sin los recursos y mecanismos necesarios para asegurar un entorno laboral óptimo y promover una administración efectiva de la entidad. Además, conllevaría un uso ineficaz del erario público al mantener a empleados que, a juicio de la autoridad nominadora concerniente, no cumplen adecuadamente con sus funciones.

Acoger la teoría del licenciado Brito llevaría a un absurdo y propendería a la dilapidación de los recursos del Gobierno, sin reconocerle a las agencias la facultad para establecer las medidas disciplinarias que entiendan pertinentes. Por las razones antes expuestas, CASP no erró al aplicar sus reglamentos y al ordenarle al licenciado Brito comparecer ante un panel revisor para apelar su suspensión.

Finalmente, como segundo señalamiento de error, el Recurrido sostiene que la CASP abusó de discreción y le violó el debido proceso de ley al negarle su derecho a una vista informal. Nada más lejos de la verdad. Del expediente ante nuestra consideración, se desprende claramente que la "**Carta de Intención sobre Imposición de Acción Disciplinaria: Suspensión de Empleo y Sueldo de Diez (10) Días Laborables**" disponía que, en caso de que el licenciado Brito deseara solicitar una vista informal, debía hacerlo dentro de un plazo de quince (15) días contados desde la notificación de la carta. En caso contrario, podía presentar un escrito argumentando su postura, en un término de treinta (30) días. El Recurrido optó por esta segunda alternativa, y al hacerlo, renunció tanto a su derecho a la vista informal como a la formal, por lo que no corresponde alegar violación alguna a su debido proceso de ley. Nótese que el derecho a vista formal es posterior a la celebración de una vista informal tras la notificación

por parte de la autoridad nominadora sobre su intención de imponerle una medida disciplinaria a un empleado. En este caso, el licenciado Brito renunció a su derecho a la celebración de tanto la vista informal como la formal al decidir presentar un escrito para que se evaluara su postura sobre la carta de intención. Por consiguiente, no se cometió el error esgrimido.

Así pues, concluimos expresamente que el Recurrente no aportó evidencia suficiente para derrotar la presunción de corrección de la cual están investidas las decisiones del foro administrativo. En el ejercicio de nuestra función revisora, venimos compelidos a darle deferencia a la especialización, experiencia y las cuestiones propias de la discreción o pericia de las agencias administrativas. Tal y como hemos adelantado, somos de la opinión de que la agencia recurrida no actuó de manera arbitraria, ilegal, irrazonable o fuera del marco de los poderes que se le delegaron.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la determinación recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones